**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eric BOYD, Defendant–Appellant.**

No. 94–3352.

United States Court of Appeals, Seventh Circuit.

Argued March 27, 1996.

Decided June 14, 1996.

Rehearing and Suggestion for Rehearing En Banc Denied July 11, 1996.

Stephen J. Liccione (argued), Office of the U.S. Atty., Milwaukee, WI, for plaintiff-appellee.

James D. Dasso, Folry & Lardner, Chicago, IL, for defendant-appellant.

Before EASTERBROOK, KANNE, and DIANE P. WOOD, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ During jury selection preceding Eric Boyd's trial for three armed bank robberies, his lawyer exercised a peremptory challenge against the only black member of the venire. Boyd did not protest, the prosecutor did not object, the jury convicted, and the judge sentenced Boyd to 650 months' imprisonment. At sentencing it became clear that Boyd's counsel had acted on racial stereotypes. He told the court that he believed that white jurors would defer to a black juror's judgment about a black defendant, and counsel did not want Boyd's fate to rest on his ability to convince a single juror. Boyd himself attributed a different stereotype to counsel: Boyd related that counsel told him that middle class blacks should be removed from the jury because they are especially likely to vote to convict lower class blacks accused of violent crime. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), hold that such beliefs—that white jurors defer to black ones, or that middle-class blacks are hanging jurors—are forbidden grounds for removing jurors, even if they are factually accurate. We must decide whether counsel's inappropriate exercise of a peremptory challenge entitles Boyd to a new trial.

■ "No" is the straightforward answer. A lawyer is the client's agent. How can Boyd protest his agent's—which is to say, his own—tactical decision? Many a defendant

would like to plant an error and grow a risk-free trial: an acquittal is irrevocable under the double jeopardy clause, and a conviction can be set aside. But steps the court takes at the defendant's behest are not reversible, because they are not error; even the "plain error" doctrine does not ride to the rescue when the choice has been made deliberately, and the right in question has been waived rather than forfeited. *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993). Boyd had a right to the verdict of a jury chosen without regard to race, but his lawyer waived that right on his behalf.

▬ Ineffective assistance of counsel would avoid the waiver, because a deficient lawyer's acts are attributed not to the accused but to the government. See *Cuyler v. Sullivan*, 446 U.S. 335, 343–46, 100 S.Ct. 1708, 1715–17, 64 L.Ed.2d 333 (1980). To establish that counsel's aid fell below the threshold established by the sixth amendment, Boyd must show, among other things, that he suffered prejudice. That he has not done. Nothing in this record suggests that the removal of the black member of the venire produced a jury that was likely to convict an innocent person, or even a jury more likely to convict a guilty one. Both the reason the attorney stated in open court, and the reason Boyd attributed to his lawyer, reveal a strategy designed to reduce the chance of conviction. *McCollum*, which holds that defense lawyers are bound by the rule of *Batson*, did not reach this conclusion in order to protect defendants from their lawyers. It did so, instead, to protect the legitimate interests of jurors and the criminal justice system. *McCollum*, 505 U.S. at 48–50, 56, 112 S.Ct. at 2353–54, 2357. Often the defendant's interests will be aligned with those other interests, but when they are not—when, for example, a racially based challenge is designed to assist the defense—*McCollum* allows the prosecutor to object and the judge to override the defense's preference. *McCollum* does not imply that all, or even many, improper peremptory challenges disserve the interests of the side making them.

▬ Boyd advances a second reason why the lawyer's decision is not conclusive. He contends that peremptory challenges are personal rights, which only the defendant may exercise. Counsel is no more authorized to exercise a peremptory challenge without the defendant's approval than to enter a guilty plea on the defendant's behalf, or to waive trial by jury over the defendant's protest, Boyd believes. Now Boyd cannot mean that the defendant alone is entitled to decide whether a black person should be seated; under *McCollum* race is off limits to defendants and lawyers alike as a ground for peremptory challenges. His argument therefore is universal: the defendant is entitled to make *every* decision about which jurors to accept and which to challenge—presumably not only the exercise of peremptory challenges, but also which jurors to challenge for cause.

▬ The conclusion does not follow from the premise. Let us suppose that the decision to accept or challenge a juror is the defendant's, so that the lawyer must consult with the accused concerning each potential juror and abide by the defendant's wishes. It would not follow that the defendant is entitled to protest for the first time after the trial is over. Consider one choice that belongs to the defendant personally: to testify or remain silent. See *Rock v. Arkansas*, 483 U.S. 44, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). Defendants regularly make that choice through counsel, and without any statement in open court. If the defendant does not testify, may he then attack the verdict by saying that his lawyer did not explain all the pros and cons, or that his lawyer declined to respect his wishes? In several circuits the answer is a flat no; unless the accused protests during trial, he cannot contest the verdict. E.g., *United States v. Pennycooke*, 65 F.3d 9 (3d Cir.1995); *United States v. Martinez*, 883 F.2d 750 (9th Cir.1989). This circuit likewise allows the choice to be made without an inquiry on the record and an explicit decision by the defendant in open court. *Underwood v. Clark*, 939 F.2d 473 (7th Cir.1991). We remarked that "[t]here is a grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right . . . to testify in his own behalf without rendering the criminal process

unworkable." *Id.* at 475. A selfserving post-trial objection "just is too facile a tactic to be allowed to succeed." *Id.* at 476. *Underwood* concludes that a *corroborated* post-trial objection may be sufficient (and thus departs from the approach of *Martinez*), but holds that the defendant's say-so does not support either a post-trial hearing or a new trial. That principle applies here too. Boyd did not object during the jury selection process, and his post-trial assertions clash with his lawyer's representation that "Eric and I discussed it... .... Eric did agree with me at the time." Boyd concedes that he discussed the matter with counsel but says that he protested and did not alert the judge because he did not believe that he had a right to countermand his lawyer's decision. As in *Underwood*, such an unsupported assertion "just is too facile a tactic to be allowed to succeed."

■ That is not the only problem with Boyd's position. Its premise is incorrect. Decisions on selection of a jury are among the many entrusted to counsel rather than to defendants personally. When the Supreme Court held in *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), that the defendant has a right to counsel that can be surrendered only by a knowing and intelligent waiver on the record, and again when it held in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), that the accused has an equal right to conduct his own defense, it treated the choice as so important precisely because a lawyer is an agent, with the power to make binding decisions, rather than just an advisor. *See also Jones v. Barnes,* 463 U.S. 745, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). The Court remarked in *Jones* that "the accused has ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal", *id.* at 751, 103 S.Ct. at 3312, but the remaining decisions are in the hands of counsel. It could hardly be otherwise, unless trials are to be indefinitely extended as judges ask the defendant whether each decision (or omission) meets with his pleasure. The process would be worse than cumbersome. It would undermine the defendant's ability to entrust decisions to a legally trained person. People charged with crime are by and large better off accepting the decisions of experienced trial lawyers than they would be making their own decisions; an amateur who receives professional advice is still an amateur. A patient can decide whether to undergo an operation, but once that decision has been taken the surgeon is in charge of implementation; so too with lawyers and trials. The defendant decides whether to go to trial and makes a few strategic decisions (such as whether to demand a jury) that shape the events, but the tactical choices rest with counsel.

■ The list of "fundamental" choices in *Jones* is similar to the list of subjects on which a judge must obtain a waiver before accepting a guilty plea. Fed.R.Crim.P. 11(c). One thing these choices have in common is a foundation in the Constitution. Constitutional rights are more fundamental than those, such as peremptory challenges, that can be eliminated at the stroke of a pen. *McCollum,* 505 U.S. at 57, 112 S.Ct. at 2358; *United States v. Wood,* 299 U.S. 123, 145, 57 S.Ct. 177, 185, 81 L.Ed. 78 (1936). A defendant is entitled to an impartial jury, not to a jury of any particular composition—or assembled by any particular means. *Holland v. Illinois,* 493 U.S. 474, 482–83, 110 S.Ct. 803, 808–09, 107 L.Ed.2d 905 (1990). Constitutional grants run *to the accused;* the Court emphasized this in *Faretta* as the principal reason why the defendant must be able to exercise or waive them personally. Peremptory challenges under Fed. R.Crim.P. 24(b) belong to a "side," not to a person. When there is more than one defendant, the court may require the defendants to exercise their challenges collectively, which is incompatible with the idea that challenges are personal, non-delegable choices.

■ Fundamental choices, which the accused alone can exercise, are the most serious steps in a prosecution—to have counsel or represent oneself; to stand trial or plead guilty; to commit one's fate to a judge or a jury; to tell one's story or remain silent. Choices like this are comprehensible to a lay person, and because they are so few (and so

vital) it is feasible to require the judge or counsel to inform the defendant about the likely consequences of exercising one option rather than another. Decisions about challenges to jurors are of another order altogether. No one knows in advance how a potential juror will react to the evidence, or how the jurors will interact with each other in the jury room. Even experienced advocates find predictions difficult. The best available study concludes that both prosecutors and defense counsel, in exercising peremptory challenges, are as likely to remove from the jury persons who favor their cause as persons who vote against it. Hans Zeisel & Shari Seidman Diamond, *The Effect of Peremptory Challenges on Jury and Verdict: An Experiment in a Federal District Court,* 30 Stan. L.Rev. 491 (1978). See also *Symposium on the Selection and Function of the Modern Jury,* 40 American L.Rev. (Win. 1991). When a subject is so complex that even trained advocates must make shots in the dark, there is little to be said for deeming the question so fundamental that the accused alone must have control.

▮▮▮ Three other variables (in addition to the constitutional commitment of the right to the accused, and the profound effects of the choice) are potentially relevant. Because they are implicit in what we have already said, we can be brief. First, rights treated as personal to the accused involve a few choices made once and for all; decisions that come up frequently (such as objections to evidence) are committed to counsel, lest the trial bog down in endless warnings to the accused, followed by private consultation and choices on the record. The decision whether to cross-examine a witness, and on what subjects, therefore is exercised by counsel even though confrontation and cross-examination are among the Constitution's express guarantees. Second, the more technical the legal rule, the less appropriate it is for the accused to make the choice personally. No one believes that the subtleties of the Federal Rules of Evidence—which often elude capable lawyers—are meet for decision by the defendant. Third, courts consign decisions

to counsel when treating them as personal to the accused would create unacceptable opportunities for gaming the system. (This is one point of *Underwood.*) On all three of these dimensions, decisions about when to challenge potential jurors—and when not to do so—are among the tactical choices committed to counsel.

▮▮▮ That particular *grounds* of decision are forbidden does not change the *locus* of decision. Attorneys may not consider race and sex when deciding which members of the venire to challenge; but neither may attorneys consider race and sex when deciding which witnesses to cross-examine. An attorney who refuses to cross-examine female witnesses, out of a misguided sense of chivalry, would violate his client's rights and would not be fit to practice. Still, the possibility of abuse does not mean that the decision may be exercised by the accused alone. So too with peremptory challenges.

▮▮▮ Our conclusion that the exercise of a peremptory challenge by the defense, in violation of *Batson* and *McCollum,* does not entitle the defendant to a new trial unless the challenge amounts to ineffective assistance of counsel, places us in respectful disagreement with *United States v. Huey,* 76 F.3d 638 (5th Cir.1996).* There were two defendants in *Huey;* one objected to the other's improper peremptory challenge, and the judge waved off the objection. The court of appeals held that not only the objecting defendant but also the defendant who exercised the improper challenge were entitled to new trials. The panel in *Huey* observed that *Batson* and *McCollum* set limits on peremptory challenges to protect the interests of jurors and the system of justice. Because the rule serves interests other than those of the accused, the court believed, a defendant can obtain a new trial by attacking his own decision. This is a non-sequitur. Important social interests allow a judge to block the defense from taking certain action; that is the holding of *McCollum.* It does not follow that by violating these important social interests a defendant can help himself to a new trial.

---

* Because this opinion creates a conflict among the circuits, it was circulated before release under Circuit Rule 40(e). None of the judges favored a hearing en banc.

Consider a few parallels. Perjury is forbidden—it is a felony; it may be the basis of an enhanced sentence, *United States v. Dunnigan*, 507 U.S. 87, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993); and a belief that the client is about to commit perjury permits counsel to expose the scheme and withdraw, *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986); *A Sealed Case*, 890 F.2d 15 (7th Cir.1989). Powerful social interests put perjury off limits. A judge will do what is possible to stop perjury before it occurs, and penalize perjury if these devices fail. Does it follow that a defendant who commits perjury only to find that the device backfires—perhaps because the jury concludes that the liar must be covering up guilt—is entitled to a new trial? No, it does not follow. See *Brewer v. Aiken*, 935 F.2d 850, 859–60 (7th Cir.1991). Then there is the choice of counsel. Society has interests in preventing obstruction of justice by defendants, who may try to coordinate through their lawyers. *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), accordingly holds that a court may insist that each defendant be separately represented. Does it follow that when the judge permits joint representation, and the defendants waive any potential conflict of interest, they may nonetheless obtain a new trial by pointing to the social interests that could have been invoked to prevent joint representation? No, it does not follow. *United States v. Roth*, 860 F.2d 1382 (7th Cir.1988).

*Huey* did not discuss any of these parallel situations. And two of the three members of the panel in *Huey* filed a concurring opinion to remark that its outcome will undermine public trust in the criminal justice system. 76 F.3d at 642 (Jolly & Duhe, JJ., concurring). Indeed so. Giving a defendant a new trial because of his own violation of the Constitution would make a laughingstock of the judicial process. If a decision of the Supreme Court gave the accused the right to bootstrap his own violation of *Batson* into a new trial, we would be obliged to enforce that holding. But there is no such decision, and the principle that no one is entitled to profit from his own wrong governs the conduct of trials as well as the imposition of criminal sanctions. Boyd's remaining arguments do not call for separate discussion, and the judgment is

AFFIRMED.