737 A.2d 1140 (1999)
325 N.J. Super. 78
STATE of New Jersey, Plaintiff-Respondent,
v.
Martel JOHNSON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 14, 1999.
Decided October 7, 1999.
*1141 Jay L. Wilensky, Assistant Deputy Public Defender, for defendant-appellant (Ivelisse Torres, Public Defender, attorney; Mr. Wilensky, of counsel and on the brief).
Melaney S. Payne, Deputy Attorney General, for plaintiff-respondent (John J. Farmer, Jr., Attorney General, attorney; Ms. Payne, of counsel and on the brief).
Before Judges PRESSLER, KIMMELMAN and CIANCIA.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Defendant Martel Johnson appeals from a judgment of conviction entered following two jury trials resulting in a verdict of guilt of one charge of first-degree robbery, N.J.S.A. 2C:15-1; one charge of seconddegree possession of a firearm with intent to use it unlawfully against a person, N.J.S.A. 2C:39-4a; and two charges of *1142 third-degree possession of a firearm without a permit, N.J.S.A. 2C:39-5b. He was sentenced to a base term of eighteen years on the first-degree crime and to concurrent maximum base terms on the other three. Because the first-degree crime was a crime of violence as defined by N.J.S.A. 2C:43-7.2d (No Early Release Act), a parole ineligibility term of eighty-five percent of the base term was imposed, namely fifteen years, three months and eighteen days. A parole ineligibility term of eightyfive percent was also imposed on the second-degree weapon crimes, and maximum parole ineligibility periods were imposed on the two third-degree crimes. Appropriate monetary penalties were also imposed.
In challenging the judgment of conviction, defendant raises the following issues:
I. THE DEFENDANT'S RIGHT TO TRIAL BY JURY WAS VIOLATED BY THE TRIAL COURT'S REFUSAL TO ALLOW HIM TO EXERCISE PEREMPTORY CHALLENGES. U.S. CONST., AMENDS. VI, XIV; N.J. CONST. (1947), ART. 1, PAR. 9.
A. The Court Erred In Disallowing Defendant's Challenge Made With the Purpose of Seating A Single Black Juror.
B. The Court Further Erred In Disallowing Defendant's Subsequent Challenge.
II. DEFENDANT'S COUNSEL WAS PREJUDICIALLY INEFFECTIVE FOR DISCLOSING DEFENDANT'S REASONS FOR EXERCISING A PEREMPTORY CHALLENGE IN THE ABSENCE OF A RULING BY THE TRIAL COURT THAT THE STATE HAD MADE A PRIMA FACIE SHOWING THAT THE CHALLENGE WAS EXERCISED ON A CONSTITUTIONALLY-IMPERMISSIBLE BASIS. U.S. CONST., AMENDS, VI, XIV; N.J. CONST. (1947), ART. 1, PAR. 10. (Not Raised Below)
III. THE TRIAL COURT ERRED TO DEFENDANT'S GREAT PREJUDICE IN DELIVERING A CHARGE AS TO FLIGHT IN THE DENNIS TRIAL.
IV. TESTIMONY BY THE ARRESTING OFFICER VIOLATED THE RULE OF STATE V. BANKSTON TO DEFENDANT'S PREJUDICE. (Not Raised Below)
V. NEW JERSEY'S RECENTLYENACTED "NO EARLY RELEASE ACT," N.J.S.A. 2C:43-7.2, WHICH PROVIDES THAT DEFENDANTS SENTENCED FOR A VIOLENT CRIME OF THE FIRST OR SECOND DEGREE MUST SERVE 85% OF THEIR SENTENCES BEFORE BECOMING ELIGIBLE FOR PAROLE, VIOLATES STATE AND FEDERAL CONSTITUTIONAL PROHIBITIONS AGAINST CRUEL AND UNUSUAL PUNISHMENT. U.S. CONST., AMENDS. VII, XIV; N.J. CONST. (1947), ART. I, PAR. 12.
VI. THE TRIAL COURT IMPOSED AN EXCESSIVE SENTENCE.
Except for what we perceive as a sentencing error in respect of the parole ineligibility period imposed on the second-degree crime requiring correction by the trial court, we affirm.
An eleven count indictment was returned against defendant Martel Johnson accusing him of related crimes arising out of his alleged robbery of two customers of a check cashing establishment on successive days and his possession of a firearm when he was arrested a week later. The first victim was Patricia Dennis, allegedly robbed on August 8, 1997, and the counts arising out of that crime include first-degree robbery based on the threat of immediate bodily injury, N.J.S.A. 2C:15-1a(2); second-degree possession of a BB gun for the purpose of using it unlawfully, N.J.S.A. 2C:39-4a; and third-degree unlawful possession of a gun, N.J.S.A. 2C:39-5b. The second victim was Luiz Lopez, allegedly robbed on August 9, 1997, and the counts *1143 arising out of that crime included firstdegree robbery based both on the use of force and threat of immediate injury, N.J.S.A. 2C:15-1a(1) and a(2), respectively, and the same weapons crimes as were involved in the Dennis robbery. Defendant was charged with four additional weapon offenses, one relating to his possession of the firearm without a permit, N.J.S.A. 2C:39-5b, and three based on his possession of a firearm as a convicted person, N.J.S.A. 2C:39-7. For purposes of trial, the charges involving Lopez and the possession of a weapon when arrested were severed from the remaining charges and tried first. The jury found defendant guilty of possession of a weapon when he was arrested but was unable to agree on the balance of the charges. The trial of the three counts involving Dennis ensued shortly after, and that jury found defendant guilty of all three. The consolidated sentencing proceeding then took place and sentence was imposed as described.[1]
Defendant's first argument is based on his use of peremptory challenges at the Dennis trial. In short, defendant is black. There were only four blacks on the 47-member panel from which the jury was to be drawn. Two were called and excused for cause. Defendant's attorney, as she freely admitted to the court when the question was raised by the prosecutor, was exercising her peremptory challenges to excuse white jurors in the hope of seating the black veniremen. The trial judge ruled that that strategy of race-based peremptory challenges was unlawful and refused to permit any further pursuit thereof. An all white jury was then sworn.
It is now beyond question that a prosecutor may not exercise peremptory challenges "to remove petit jurors who are members of a cognizable group on the basis of their presumed group bias...." State v. Gilmore, 103 N.J. 508, 517, 511 A.2d 1150 (1986). That is a principle not only of state constitutional law but of federal constitutional law as well. See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In Georgia v. McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), a divided Supreme Court, reversing the contrary decision of the Georgia Supreme Court,[2] extended Batson to the litigation conduct of a criminal defendant, holding that in the context of the exercise of peremptory challenges, the defendant's conduct constitutes state action for purposes of the Equal Protection Clause of the Fourteenth Amendment and hence that race-based peremptory challenges by defendants are as violative of the Equal Protection Clause as are such challenges by the prosecutor.
The defendant in McCollum was white and was using his peremptory challenges to excuse blacks. Defendant here argues that the United States Supreme Court left open the question of whether McCollum applies to black defendants, forbidding them from excusing whites in order to have the opportunity of seating blacks on the jury. Assuming the question remains open, defendant advances cogent and persuasive reasons for relieving minority defendants from the onus of McCollum. In essence, defendant argues that the point of Batson and Gilmore is to insure jury service by minority group members in their own interests and in the interests of minority group defendants and that extension of McCollum to minority group defendants defeats and perverts that underlying and overriding policy of inclusion. The problem with our consideration of this argument is our conviction that McCollum did not leave the issue open and hence that as a matter of the Supremacy Clause, U.S. Const. art. VI, cl. 2, we are not free to entertain it.
*1144 We are aware that in his concurring opinion in McCollum, Justice Thomas observed that, "[t]oday, we decide only that white defendants may not strike black veniremen on the basis of race. Eventually, we will have to decide whether black defendants may strike white veniremen." 505 U.S. at 67, 112 S.Ct. at 2360, 120 L.Ed.2d at 53. But the force of that observation, on which defendant relies, was severely blunted by Justice Thomas himself, who added, in his accompanying footnote, that:
The NAACP Legal Defense and Educational Fund, Inc., has submitted a brief arguing, in all sincerity, that "whether white defendants can use peremptory challenges to purge minority jurors presents quite different issues from whether a minority defendant can strike majority group jurors." Brief for NAACP Legal Defense and Educational Fund, Inc., as Amicus Curiae 3-4. Although I suppose that this issue technically remains open, it is difficult to see how the result could be different if the defendants here were black.

[Ibid.]
We are further persuaded that the arguments defendant makes here were not only presented in the NAACP amicus curiae brief, to which Justice Thomas referred, which we have reviewed, and which the majority of the Court rejected, but also in the body of Justice Thomas' concurring opinion and the separate dissents of Justice O'Connor and Justice Scalia, whose reasoning the majority also rejected. 505 U.S. at 62, 112 S.Ct. at 2361, 120 L.Ed.2d at 53, and 505 U.S. at 69, 112 S.Ct. at 2364, 120 L.Ed.2d at 58, respectively.
While the issue has not been directly addressed in a reported decision in this State, judicial authority elsewhere reinforces our conclusion that McCollum is preemptive of the issue before us. We note first that while McCollum was pending in the United States Supreme Court, the Supreme Court of Georgia, the jurisdiction from which McCollum arose, specifically held in State v. Carr, 261 Ga. 845, 413 S.E.2d 192 (1992), that Batson did not apply to a black defendant who had exercised fifteen peremptory challenges to strike white veniremen in order to have the opportunity to seat blacks. Georgia's ensuing certiorari petition was granted, and four months after the decision in McCollum, the United States Supreme Court vacated the Georgia judgment in Carr and remanded to the Georgia Supreme Court for reconsideration in the light of McCollum. Georgia v. Carr, 506 U.S. 801, 113 S.Ct. 30, 121 L. Ed.2d 3 (1992). On remand, the Georgia Court reversed its Carr judgment, concluding that McCollum interdicts all race-based peremptory challenges by whomever made in a criminal trial. State v. Carr, 262 Ga. 893, 427 S.E.2d 273 (1993). Moreover, since McCollum, every court that has considered the issue in the context of a black defendant has, without exception that we can find, concluded that McCollum is dispositive, forbidding black defendants from making race-based peremptory challenges. See Gilchrist v. State, 340 Md. 606, 667 A.2d 876 (1993); Griffin v. Mississippi, 610 So.2d 354 (Miss.1992); State v. Govan, 312 S.C. 71, 439 S.E.2d 263 (1993); Daniels v. State, 238 Ga.App. 511, 519 S.E.2d 269 (1999); People v. Yarbrough, 187 A.D.2d 475, 589 N.Y.S.2d 891 (N.Y.App. Div.1992); Ezell v. State, 909 P.2d 68 (Okla.Crim.App.1995).
Having concluded that defendant was correctly precluded from making racebased peremptory challenges, we reject defendant's correlative argument that he was denied effective assistance of counsel by reason of counsel's admission of that strategy to the court. It is clear from this record that the State established a prima facie case of race-based challenges, shifting to defense counsel the burden of articulating to the court a reasonable explanation supporting her legitimate use of those challenges. See State v. Gilmore, supra, 103 N.J. at 537-538, 511 A.2d 1150. In this posture, her candor as an officer of *1145 the court was required. Moreover, one of the two prongs of remediable ineffectiveness is the prejudice to defendant resulting from counsel's allegedly deficient performance. State v. Fritz, 105 N.J. 42, 52-53, 519 A.2d 336 (1987). The only prejudicial effect of counsel's disclosure of her strategy to the court was her inability to pursue it. But since defendant, as a matter of constitutional law, was not entitled to the benefit of that strategy, he cannot be said to have been remediably prejudiced by its failure.
We find no merit to defendant's remaining challenges to the guilty verdicts. R. 2:11-3(e)(2). Defendant claims that it was error for the court to instruct the jury that it could infer defendant's consciousness of guilt of the crimes committed on August 8 and 9 from the fact that he fled from the police on August 16. This is what the judge said:
According to the State's evidence, the alleged offenses took place on August the 8, 1997. There has been some testimony in the case from which you may infer that when the defendant encountered a police officer on a later date, August 16, 1997, he fled. The question of whether the defendant fled after the commission of the crimes is another question of fact for your determination. If you find that the defendant fled on August the 16, 1997, fearing that an accusation would be made against him or that he would be arrested for offenses that took place on August the 8, 1997, then you may consider such flight in connection with all the other evidence in the case as an indication or proof of consciousness of guilt on the part of the defendant.
We are satisfied that there was no error in the charge. We do not regard the lapse of time of a week between commission of the crime and fleeing from the officer as precluding the jury from inferring that the flight was probative of defendant's consciousness of guilt. We also recognize defendant's argument that if his flight from the police on August 16 was probative of consciousness of guilt, it was probative only of consciousness of guilt of illegal weapon possession since he was then armed and not of the two robberies. That issue, however, and what inferences should be drawn were, in our view, matters for the jury. See, e.g., State v. Jordan, 285 N.J.Super. 589, 599, 667 A.2d 1094 (App. Div.1995), aff'd, 147 N.J. 409, 688 A.2d 97 (1997).
We also reject defendant's plain-error claim based on the assertion that the police witnesses violated State v. Bankston, 63 N.J. 263, 307 A.2d 65 (1973), by repeating the hearsay instructions and information they received from their dispatcher in explaining to the jury why they arrested defendant. The import of that information was that a person matching the description of the check-cashing robber and believed to be armed and dangerous was in a specific location. The dispatcher then gave the officers a description of that person.
We have no doubt that this testimony did constitute a violation of the Bankston principle that in order to avoid testifying with respect to such hearsay information, the police witness must use an "on information received" form of expression. The question, however, is not whether Bankston was violated but rather whether the admission of the offending testimony constituted plain error, defendant not having objected thereto at trial. From our review of the record, we cannot say, in light of the evidence adduced, that the offending testimony had a clear capacity to have affected the outcome of trial. See, e.g., State v. Irving, 114 N.J. 427, 447-448, 555 A.2d 575 (1989) (similarly rejecting a plain-error claim in respect of a Bankston violation). See also State v. Douglas, 204 N.J.Super. 265, 275, 498 A.2d 364 (App.Div.), certif. denied, 102 N.J. 378, 508 A.2d 242 (1985); 102 N.J. 393, 508 A.2d 253 (1986). We are persuaded that in view of the substantial credible evidence of direct identification, the error here was, as in Irving and Douglas, harmless.
*1146 With respect to the challenges to the sentence, defendant first claims that the No Early Release Act, N.J.S.A. 2C:43-7.2, requiring imposition of an eighty-five percent parole ineligibility period on sentencing for violent crimes of the first and second degree is unconstitutional. Defendant did not raise this issue in the trial court, and we are not, therefore, obliged to consider it. See, e.g., State v. McGraw, 129 N.J. 68, 81, 608 A.2d 1335 (1992). We note, nevertheless, that increasingly severe mandatory sentencing prescribed by the Legislature, including the so-called Three Strikes Law, N.J.S.A. 2C:43-7.1, has survived constitutional challenge. See, e.g., State v. Oliver, 316 N.J.Super. 592, 720 A.2d 1001 (App.Div.1998), certif. granted, 158 N.J. 74, 726 A.2d 937 1999). We further note that at least twenty-seven states and the District of Columbia have enacted legislation similar to N.J.S.A. 2C:43-7.2, Bureau of Justice Statistics, U.S. Dept. of Justice, Special Report: Truth in Sentencing in State Prisons, at 2-3 (Jan.1999). Insofar as we have been able to determine, the constitutional challenges to that legislation have been rejected. See, e.g., State v. Lara, 580 N.W.2d 783, 785-786 (Iowa), cert. denied, ___ U.S. ___, 119 S.Ct. 523, 142 L.Ed.2d 434 (1998); State v. Williams, 936 S.W.2d 828, 831-832 (Mo.Ct.App.1996). We are not concerned with the wisdom of the No Early Release Act but only with whether it violates the federal and state constitutions and, particularly, the Eighth Amendment of the Federal Constitution proscribing cruel and unusual punishment. We are not persuaded that this severe treatment for violent criminals runs afoul of that proscription.
Finally, we consider defendant's particularized sentencing claims. We first note, although not raised by either party, that the judge applied the parole ineligibility requirement of the No Early Release Law to defendant's conviction of the second-degree crime of possession of a firearm with intent to use it unlawfully against another. We are satisfied that it was error to do so. "Violent crime" eligible for eighty-five percent mandatory sentencing is defined by N.J.S.A. 2C:43-7.2d in pertinent part as follows:
For the purposes of this section, "violent crime" means any crime in which the actor causes death, causes serious bodily injury as defined in subsection b. of N.J.S. 2C:11-1, or uses or threatens the immediate use of a deadly weapon. "Violent crime" also includes any aggravated sexual assault or sexual assault in which the actor uses, or threatens the immediate use of, physical force.
We think it plain that a purely possessory crime does not meet this definition. One cannot by mere possession with an unlawful purpose be deemed to have actually caused either death or serious bodily injury or used or threatened the immediate use of a deadly weapon. These are certainly elements of the robberies for which defendant was indicted and, certainly, threat of use of a deadly weapon was an element of the robbery of which defendant was convicted. But they are not elements of the purely possessory crime. A defendant must do more than have the intent to use the weapon unlawfully against the person of another before he meets the statutory definition of a violent criminal. We agree with the holding in State v. Thomas, 322 N.J.Super. 512, 518, 731 A.2d 532 (App.Div.1999), that the No Early Release Act must be strictly construed. Under that canon of construction, we are satisfied that purely possessory crimes must be excluded from its reach. We therefore vacate the sentence imposed on the second-degree possessory crime and remand for re-sentencing on that conviction alone.
With respect to the balance of the sentence, the judge was well aware that he was imposing a sentence greater than the presumptive sentence for the first-degree crime and the two third-degree crimes. We conclude, however, that the sentence was supported by his findings of aggravating factors and his conclusion that there *1147 was no mitigating factor. The sentences are consistent with the Code, and we see no warrant for interfering with the judge's exercise of sentencing discretion.
We remand for re-sentencing on the conviction of second-degree possession of a firearm for an unlawful purpose. In all other respects, the judgment of conviction is affirmed.
NOTES
[1] The record does not indicate the ultimate disposition of the charges mistried by the first jury or the charges of possession of a weapon by a convicted person.
[2] 261 Ga. 473, 405 S.E.2d 688 (1991).