774 A.2d 597 (2001)
340 N.J. Super. 339
STATE of New Jersey, Plaintiff-Respondent,
v.
Elvido CHEVALIER, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted March 19, 2001.
Decided May 11, 2001.
*599 Peter A. Garcia, Acting Public Defender, attorney for appellant (Gilbert G. Miller, Designated Counsel, of counsel and on the brief).
Ronald S. Fava, Passaic County Prosecutor, attorney for respondent (Jane E. Hendry, Senior Assistant Prosecutor, of counsel and on the brief).
Before Judges PETRELLA, BRAITHWAITE and WELLS.
*598 The opinion of the court was delivered by BRAITHWAITE, J.A.D.
Following a jury trial, defendant Elvido Chevalier appeals from his convictions of aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1); sexual assault, N.J.S.A. 2C:14-2(b) and endangering the welfare of a child, N.J.S.A. 2C:24-4(a). The victim was defendant's stepdaughter who at the time of *600 the offenses was less than thirteen years of age.
Defendant was sentenced to a custodial term of nineteen years with an eight-year parole disqualifier on the aggravated sexual assault conviction. He received a concurrent nine-year custodial term, with a four-year parole bar on the sexual assault conviction, and a concurrent five-year custodial term, with a two-year period of parole ineligibility on the endangering the welfare of a child conviction.
This conviction and sentence resulted from defendant's second trial. The first trial ended in a mistrial when the jury was unable to reach a verdict. During the selection of the jury for the first trial, the trial judge found defense counsel "had used his peremptory challenges to exclude members of a cognizable group," namely women. State v. Clark, 316 N.J.Super. 462, 466, 720 A.2d 632 (App.Div.1998). As a remedy, the judge warned defense counsel not to engage in the practice. Jury selection proceeded thereafter without any further problem, and, as noted, defendant's trial resulted in a mistrial.
Thereafter, defendant was retried. During jury selection for the second trial, the State charged that defense counsel was improperly excluding jurors based on their gender. Once again, the trial judge found that defense counsel engaged in the improper exclusion with respect to three female jurors. The judge, recognizing that he could start jury selection anew with a different venire, see State v. Gilmore, 103 N.J. 508, 539, 511 A.2d 1150 (1986), declined to take that course, but instead reseated the three jurors. He imposed that remedy because he was dealing with "a time schedule" that would "probably" result in no trial testimony being presented on the day of jury selection. The other time constraint according to the trial judge was his unavailability the following week.
After reseating the three jurors, the judge instructed both the jurors seated in the jury box and the remainder of the venire to disregard his ruling that reseated the jurors when deciding the merits of the case. Specifically, he told them that his decision to reseat the three jurors should not concern the selected jurors who would decide the outcome of defendant's trial. Jury selection continued thereafter without any further issues, and the empaneled jury convicted defendant.
Defendant now appeals and contends:
POINT I
DEFENDANT'S CONSTITUTIONAL RIGHT TO TRIAL BY JURY AND RIGHT TO SEEK A FAIR AND IMPARTIAL JURY THROUGH A FREE EXERCISE OF PEREMPTORY CHALLENGES WAS VIOLATED BY THE TRIAL COURT'S REFUSAL TO ALLOW HIM TO EXERCISE THREE PEREMPTORY CHALLENGES AND ITS RESEATING OF THE THREE JURORS WHO HAD BEEN CHALLENGED.
POINT II
DEFENDANT'S SENTENCE WAS MANIFESTLY EXCESSIVE.
Defense counsel improperly used his peremptory challenges to exclude female jurors solely on the basis of gender. We conclude, however, that the trial judge erred, under the circumstances here, in reseating the three jurors and now reverse and remand for a new trial.

I
Before addressing the peremptory challenge issue, we briefly set forth the facts. Defendant married a woman in 1981 who had three children, two sons and a daughter. The daughter is the victim in this case. The victim was two years of age at *601 the time of her mother's marriage to defendant.
According to the victim, defendant's assaults began when she was six years old and took place in the family dwelling. According to testimony, defendant engaged in sexual intercourse with the victim until she was twelve years of age.
In 1995, after the victim told a friend about defendant's conduct, a teacher, the principal at the victim's school, and the police became involved. On the day she went to police headquarters to discuss the incidents, the victim told her mother about the history of sexual abuse. Defendant was then arrested.
A doctor examined the victim and concluded that she had an excessive vaginal opening consistent with the pre-pubescent penile penetration and long term sexual abuse. The doctor also testified that the victim had an area of her vagina that had "thinned out," which was consistent with penile entrance.
Defendant denied the allegations in the indictment. He testified that at no time did he ever touch the victim in an inappropriate manner or have sexual intercourse with her.

II
The use of peremptory challenges to exclude prospective jurors on the basis of gender violates both the United States Constitution and the New Jersey Constitution. In J.E.B. v. Alabama, 511 U.S. 127, 129, 114 S.Ct. 1419, 1421, 128 L.Ed.2d 89, 91-92 (1994), the United States Supreme Court held that the equal protection clause of the Fourteenth Amendment prohibits the State from exercising peremptory challenges to remove jurors on the basis of gender. Our Supreme Court in Gilmore, supra, 103 N.J. at 517, 511 A.2d 1150, relying on Article 1, Paragraphs 5, 9 and 10 of the New Jersey Constitution, held that a prosecutor is forbidden to exercise peremptory challenges "to remove potential petit jurors who are members of a cognizable group on the basis of their presumed group bias." Ibid. Women constitute a cognizable group within the intendment of Gilmore. Id. at 524, 511 A.2d 1150.
Although J.E.B. and Gilmore address this issue in the context of the prosecutor exercising peremptory challenges based on gender, the same prohibition applies to a defendant's use of peremptory challenges to exclude jurors based on gender. Georgia v. McCollum, 505 U.S. 42, 57, 112 S.Ct. 2348, 2358, 120 L.Ed.2d 33, 51 (1992); State v. Johnson, 325 N.J.Super. 78, 84-85, 737 A.2d 1140 (App.Div.1999), certif. denied, 163 N.J. 12, 746 A.2d 458, order vacated, 163 N.J. 393, 749 A.2d 367 (2000) (limited to defendant's constitutional challenges to the No Early Release Act). Although both McCollum and Johnson are cases where defendants exercised peremptory challenges based on race, we are satisfied that the same principles apply to defendants who exercise peremptory challenges to exclude potential jurors based on gender.
The determination of whether a defendant has used peremptory challenges in a discriminatory manner requires the utilization of a three-step procedure. We described that procedure in Clark, supra, 316 N.J.Super. 462, 720 A.2d 632, in the context of the prosecutor exercising peremptory challenges in a racially discriminatory manner. The same procedure applies when a defendant engages in this practice and the discrimination is based on gender. The three-step procedure is:
As described in Gilmore, the [State] initially has the burden to make a "prima facie showing that the [defense] exercised its peremptory challenges on constitutionally-impermissible *602 grounds." 103 N.J. at 535, 511 A.2d 1150. To satisfy this burden, [the State] "must establish that the potential jurors wholly or disproportionately excluded were members of a cognizable group within the meaning of the representative cross-section rule" and that "there is a substantial likelihood that the peremptory challenges resulting in the exclusion were based on assumptions about group bias rather than any indication of situation-specific bias." Id. at 535-36, 511 A.2d 1150. If [the State] makes this prima facie showing, "[t]he burden shifts to the [defense] to come forward with evidence that the peremptory challenges under review are justifiable on the basis of concerns about situation-specific bias." Id. at 537, 511 A.2d 1150. To satisfy its burden, "the [defense] must articulate `clear and reasonably specific' explanations of its `legitimate reasons' for exercising each of the peremptory challenges." Ibid. (quoting Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 258, 101 S.Ct. 1089, 1096, 67 L.Ed.2d 207, 218 (1981)). Finally, if the [defense] presents such reasons, "the trial court must judge the [State's] prima facie case against the [defense's] rebuttal to determine whether the [State] has carried the ultimate burden of proving, by a preponderance of the evidence, that the [defense] exercised its peremptory challenges on constitutionally-impermissible grounds of presumed group bias." Id. at 539, 511, 511 A.2d 1150
[Clark 316 N.J.Super. at 468-69, 720 A.2d 632.]
Although under the United States Constitution "a similar three-step procedure" is employed, a heavier burden is placed on a defendant under the New Jersey Constitution to overcome a prima facie showing that he or she "has exercised peremptory challenges on constitutionally-impermissible grounds." Id. at 469, 720 A.2d 632. Under the United States Constitution, a defendant would simply have to offer a reason that had "facial validity" and "`[u]nless a discriminatory intent is inherent in the [defendant's] explanation, the reason offered will be deemed race neutral.'" Purkett v. Elem, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995) (citation omitted). A race neutral reason can be "silly" or "superstitious." Ibid.
The New Jersey Constitution has a stricter rule. See James H. Coleman, Jr., The Evolution of Race in the Jury Selection Process, 48 Rutgers L.Rev. 1105, 1132-33 (1996). Defendant's burden, under the New Jersey Constitution, can be met only by the articulation of grounds "that are reasonably relevant to the particular case on trial or its parties or witnesses." Gilmore, supra, 103 N.J. at 538, 511 A.2d 1150. A defendant must "show a genuine and reasonable ground for believing that a prospective juror might have an individual or personal bias that would make excusing him or her rational and desirable." State v. McDougald, 120 N.J. 523, 555, 577 A.2d 419 (1990).
With this backdrop, we now examine the trial judge's determination that defendant used peremptory challenges to remove potential jurors "who are members of a cognizable group on the basis of their presumed group bias." Gilmore, supra, 103 N.J. at 517, 511 A.2d 1150. The claim by the prosecutor was that defendant used peremptory challenges to improperly exclude women from the jury.
During jury selection, twelve of the fourteen jurors who were initially selected were women. The judge then proceeded to excuse several of the jurors for cause. Following replacement of these jurors, the composition of the proposed jury was eight *603 women and six men, prior to the parties' use of peremptory challenges
Thereafter, the parties began using their peremptory challenges. The prosecutor used a peremptory challenge to excuse one of the male jurors, which led ultimately to a proposed jury composed of nine women and five men. The judge then turned to defense counsel to exercise a multiple peremptory challenge. Counsel exercised six challenges; five of these challenges excused women. The women jurors excused were described as jurors two, three, four, twelve, and fourteen. The judge then requested to see counsel in chambers.
In chambers, the prosecutor objected. She said in part:
The reason I asked to be heard, Judge, is the fact that Mr. Fernandez just exercised six of his peremptory challenges. Of those peremptory challenges, five he excluded were women. And Your Honor found at the beginning of the last trial that we commenced in this matter last week that Mr. Fernandez had been engaging in a discriminatory practice of exercising his peremptory challenges against female jurors.
The trial judge, noting his finding from the first trial that defendant had improperly excluded women jurors, asked defense counsel to explain his challenges. Defense counsel replied that jurors twelve and fourteen were nurses and further stated:
Given the standards of expert testimony from aa Laurie Dixon who'll be testifying with regard to her findings that the alleged victim has consistent findings of sexual abuse I was afraid that their close relationship in the hospital setting would sort of impact on their independent determination of the facts in this case since they work [in] a capacity as nurses. Inin their profession they're used to interacting and accepting doctors' directions asas orders and truth. Those are my reasons for excusing jurors twelve and fourteen.
With respect to jurors two, three and four, the following occurred in chambers:
MR. FERNANDEZ: ... [J]uror number three was somebody who I saw as they exited talked to juror number two and conversed. She's already, I think, talking about the case and I didn't get a good
THE COURT: Wait a minute. You ... think number three and number two were talking about the case?
MR. FERNANDEZ: No, no, no, no. I said juror number three I saw talking to juror number two commenting on I don't know what about but it leads me to believe that she may not follow your instructions with regard to not commenting about the case prior to deliberations.
THE COURT: Uh-huh. Okay. That leaves number four.
MR. FERNANDEZ: [Juror number four] talked about [working] for the Public Information Department over at William Patterson College and she had a daughteror I forget what college. Somewhere she worked for Public Information.
THE COURT: William Patterson University.
MR. FERNANDEZ: Yeah. And I think she had a daughter who worked in the same capacity at Chase Manhattan Bank[,][New] York. I just didn't get a good vibe from juror number four.
The prosecutor argued that defendant was unconstitutionally using his peremptory challenges to remove women from the jury and requested that the challenged jurors be reseated.
The judge found that defendant's reasons for challenging the two nurses, jurors *604 twelve and fourteen, were adequate. However, with respect to the remaining jurors, the judge said:
Well, I'm satisfied that ... the six challenges demonstrate an effort to systematically excuse an identifiable group, namely women. I made that same finding in the last trial when there were in the course of the jury selection ten women that were excused by the defense. And now the first ... row of challenges there are five out of six women. With that history I don't know how I could not find that there is a systematic exclusion of women.
....
Here, I'm satisfied that there is no arguable basis presented for challenging three and two because jurors were commenting to one another in the intervals when they're sitting there waiting. There are-that could be said about an awful lot of jurors that they passed some comment to one another during the selection process at times when they're just sitting there waiting for things. I'm satisfied that that was presented as an excuse to justify eliminating someone who was excused because they were female. And number four is almost ridiculous, as many of the excuses that were given last week are-were ridiculous, because she works for William Patterson College and is a public information officer he didn't get a good vibe.
III
"An Appellate Court will extend substantial deference to a trial [judge's] findings relating to whether [a defendant] has exercised [his or her] peremptory challenges on constitutionally-impermissible grounds." Clark, supra, 316 N.J.Super. at 473, 720 A.2d 632. Given this standard, we agree with the trial judge that the defense's reasons for excusing jurors twelve and fourteen were reasonable and genuine. We also agree with the trial judge's finding that the defense's reasons for excusing jurors two, three and four violated the New Jersey Constitution because these female jurors, who are members of a cognizable class were removed "on the basis of their presumed group bias." Gilmore, supra, 103 N.J. at 517, 511 A.2d 1150.
In fashioning a remedy, the judge noted that, in his experience, unlawful use of peremptory challenges was used more by the defense than the State. The judge went on to state:
But it sort of blackmails the court because I'm dealing with a time schedule here that everyone knows about. I have to try the case this week. I'm not here next week. I could start all over again. I don't know if the State wants me to do that, but it would mean probably we wouldn't get into testimony today because we'd have to get another panel. I don't know where we'd find another pane[l].
....
But at the same time, I can't let myself be blackmailed into just allowing this to happen. I wouldn't allow the State to do anything like this. I shouldn't allow the defense to do it either. There seems to be the perception that women are bad for the defense. I don't know how valid that perception is. But the last case resulted in a jury that was made up of I believe nine men and three-no, [eleven] men and three females. And now there is the systematic exclusion of five of-an exclusion of five out of the six jurors are female.
The judge decided to reseat jurors two, three and four and said:
So I'm going to reseat jurors number four, three and two if the State wants *605 me to do that, and I'll instruct the jury that they shouldn't draw any inference from that. I'll give them some instruction about that. [T]his is being forced on me and I ... feel it's the only alternative I have. Otherwise, the defense is free to do these kinds of things in these kinds of situations.
Defense counsel objected to the trial judge's decision and requested that jurors number two and three be seated apart. The judge denied the request. The judge and the parties then returned to open court. In open court, the judge reseated jurors two, three and four, and instructed the jurors in the jury box and those remaining in the venire that they were not to consider the reseating of the jurors in their deliberations. Jury selection then continued briefly, with a woman replacing juror number one, the male juror challenged by defense counsel, and two women replacing jurors twelve and fourteen.
The women juror who replaced juror fourteen was excused for cause. Defense counsel then argued that the judge's ruling had a chilling effect on his right to exercise peremptory challenges. The judge was unmoved and directed counsel to make challenges "as diligently as you can ethically and properly do that."
Jury selection then continued to conclusion, with neither side exercising another challenge. A male juror replaced the woman juror who had been excused for cause. The final jury composition was nine women and five men.
At the end of the jury selection process, defense counsel moved for a mistrial on the basis that his exercise of peremptory challenges had been "chill[ed]" by the judge's ruling. The motion was denied.

IV
Because we are satisfied that defendant's use of peremptory challenges violated the constitutional prohibition against removing jurors who are members of a cognizable group on the basis of their presumed group bias, Gilmore, supra, 103 N.J. at 517, 511 A.2d 1150, we must next consider the remedy employed by the trial judge to address defendant's improper use of peremptory challenges. Defendant argues that the trial judge erred in reseating the challenged jurors and should have dismissed the jurors selected, the remaining venire, and drawn a different venire to begin "jury selection ... anew." Id. at 539, 511 A.2d 1150 (citation omitted). Defendant relies on Gilmore, supra, and State v. Scott, 309 N.J.Super. 140, 706 A.2d 1109 (App.Div.), certif. denied, 154 N.J. 610, 713 A.2d 501 (1998).
The State argues that the peremptory challenge claim here "is based upon federal constitutional law," which allows "the appropriate remedy to be prescribed by the trial courts." It argues that reseating the three jurors was an appropriate remedy in light of defendant's use of peremptory challenges in both the first trial that ended in a mistrial and in the trial on appeal. The State also relies on United States v. Boyd, 86 F.3d 719 (7th Cir.1996), cert. denied, 520 U.S. 1231, 117 S.Ct. 1825, 137 L.Ed.2d 1032 (1997), for the proposition that a defendant is not entitled to a new trial when it is he who engages in the improper use of peremptory challenges. In Boyd, the defendant's counsel exercised a peremptory challenge against the only black member of the venire. The defendant did not object, the prosecutor did not object, and the defendant was convicted.
We reject the State's argument and conclude that Gilmore controls the outcome of this appeal and that the State's reliance on Boyd is misplaced. Essentially, Boyd stands for the proposition that a defendant who employs a certain tactical decision, *606 which fails because he is subsequently convicted, is not entitled to a new trial. As the Seventh Circuit observed, "Boyd had a right to the verdict of a jury chosen without regard to race, but his lawyer waived that right on his behalf." Id. at 722. Further, unlike here, no jurors were reseated in Boyd.
In deciding this issue, we are cognizant that both Gilmore and Scott arose in the context of the State's improper use of peremptory challenges. In Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court left to the States how to implement its holding when an allegation of improper use of peremptory challenges by the prosecutor was sustained by the defendant. Id. at 98-99 n. 24, 106 S.Ct. at 1725 n. 24, 90 L.Ed.2d at 90 n. 24. The Court noted that discharging the entire venire and starting anew or alternatively reseating the improperly challenged jurors were potential ways of addressing the improper use of peremptory challenges. Ibid. "[T]he majority of jurisdictions [that] have[ ] addressed the issue leave the decision of the appropriate remedy within the discretion of the trial judge to reseat the wrongfully challenged venireperson." Scott, supra, 309 N.J.Super. at 151, 706 A.2d 1109.
Here, in New Jersey, our Supreme Court decided the remedy in this context:
If the defendant is found to have sustained this burden, the court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement, and it must dismiss the jurors thus far selected. So too it must quash any remaining venire, since the complaining party is entitled to a random draw from an entire venire-not one that has been partially or totally stripped of members of a cognizable group by the improper use of peremptory challenges. Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew.
[Gilmore, supra, 103 N.J. at 539, 511 A.2d 1150 (citation omitted).]
"Gilmore unequivocally requires that the entire venire be discharged and the selection process begin anew where there has been an unconstitutional use of a peremptory challenge." Scott, supra, 309 N.J.Super. at 152, 706 A.2d 1109.
Our review of this record convinces us that the trial judge here should have applied the Gilmore remedy. Therefore, the trial judge erred in reseating the three challenged jurors. We reach this conclusion because the Gilmore remedy is the one established by our Supreme Court and further because, although the reseating of jurors might be an appropriate remedy in certain circumstances when a defendant improperly uses peremptory challenges, the circumstances to support such a remedy did not exist here.
Although, as noted, Gilmore arose in the context of the State's improper use of peremptory challenges to exclude jurors based on race, the constitutional prohibition on the practice of improper use of peremptory challenges is rooted in a defendant's right to a trial by an impartial jury. 103 N.J. at 524, 511 A.2d 1150. The State enjoys a similar right. "The goal of the Sixth Amendment is jury impartiality with respect to both contestants." McCollum, supra, 505 U.S. at 58, 112 S.Ct. at 2358, 120 L.Ed.2d at 51 (internal quotation marks omitted). We reach no different conclusion under the New Jersey Constitution. In non-capital cases, judges in New Jersey give as part of their preliminary instructions to the jury the following charge:
The first step in a jury trial is the selection of the jury. This process is *607 important because both the State and the defendant are entitled to jurors who are impartial and agree to keep their minds open until a verdict is reached. Jurors must be as free as humanly possible from bias, prejudice or sympathy and must not be influenced by preconceived ideas.
[Model Jury Charges (Criminal), "Preliminary Instructions to the Jury (non-capital cases)" (February 24, 1997).]
An impartial jury is one "drawn from a representative cross-section of the community." Gilmore, supra, 103 N.J. at 523, 511 A.2d 1150. Here, the trial judge reseated the three jurors because he felt "blackmailed" by the defendant's improper use of peremptory challenges and believed that obtaining a new panel to begin jury selection anew would be difficult because of time constraints. According to the judge, employing the Gilmore remedy, might have caused defendant's trial to be continued into the next week when the judge was unavailable. The judge therefore believed that the "only alternative" was to reseat the three jurors.
The judge obviously believed he was being "blackmailed" because defense counsel was continuing to engage in the improper use of peremptory challenges that carried over from the aborted first trial that ended in a mistrial. Apparently, with the time constraints he faced, the judge believed that counsel would continue to engage in the improper use of such challenges even if a new venire was obtained for the trial.
The judge, however, should have applied the Gilmore remedy. He should have discharged the jurors seated in the jury box, dismissed the remaining venire, obtained a new venire, and begun jury selection anew. We are not insensitive to the judge's time constraints, but a fair trial for both sides clearly outweighs time constraint considerations. If time constraints were unavoidable, the trial should have been adjourned.
We are satisfied that, in the first instance, whether it is the State or the defense that engages in the improper use of peremptory challenges, the Gilmore remedy should apply. First, it is the remedy provided by our Supreme Court. Second, although the remedy was fashioned to address the State's improper use of peremptory challenges, we fail to perceive why it should not apply initially when the defense engages in this practice. The remedy ensures a fair and impartial jury, which is the goal of prohibiting the practice regardless of the offending party.
In line with ensuring an impartial jury, we sense there may be situations where jurors who are removed by peremptory challenges and then reseated might resent defense counsel and "take it out on his client" in deciding the case, rather than deciding the case on the evidence. Cf. State v. McCollum, 334 N.C. 208, 236, 433 S.E.2d 144, 159 (1993), cert. denied, 512 U.S. 1254, 114 S.Ct. 2784, 129 L.Ed.2d 895 (1994) ("To ask jurors who have been improperly excluded from a jury ... to then return to the jury to remain unaffected by that recent discrimination, and to render an impartial verdict ... would be extremely difficult for a person possessed of any sensitivity whatsoever to carry out successfully.").
In our view, our Supreme Court in Gilmore recognized that there may be differences, including differences in remedy, when a defendant engages in the improper use of peremptory challenges as opposed to the State using such methods. See Id. at 532-33 n. 6, 511 A.2d 1150. Although it is now settled that defendants cannot engage in such discriminatory conduct, Johnson, supra, 325 N.J.Super. at 84-85, 737 *608 A.2d 1140, the remedy for such conduct, in certain circumstances, may be something different from that pronounced in Gilmore. We perceive that in a circumstance where a defendant has engaged in the improper use of peremptory challenges and the judge has applied the Gilmore remedy, it would be appropriate for the judge to warn counsel that a subsequent use of improper peremptory challenges could lead to other sanctions,[1] including the reseating of the improperly removed jurors. Such a warning would put counsel and defendant on notice that improper conduct will not be permitted and that the continued use of such challenges will have the potential for severe consequences. Any such reseating of jurors, however, will have to be accompanied by an appropriate jury instruction.
We recognize that here defendant was given a warning during the first trial about his use of peremptory challenges based on gender. However, he was not warned about the potentially severe consequence of having jurors who were removed being reseated to determine his guilt or innocence. Moreover, defendant was not sufficiently and specifically warned about any potential consequence to his continued use of peremptory challenges.
We have addressed this issue because we can foresee it arising in future cases. In such instances, a trial judge should warn defense counsel of the potential consequences, as detailed above, that may result from continuing to engage in the improper use of peremptory challenges. We note that the State could conceivably engage in similar conduct and perhaps the remedy of reseating jurors would be appropriate in that circumstance. However, the State's continued improper use of peremptory challenges, we believe, could result in the dismissal of the indictment for prosecutorial misconduct. Cf. Grill v. City of Newark, 311 N.J.Super. 149, 162, 709 A.2d 333 (Law Div.1997) (noting that dismissal after an indictment is an available remedy in certain instances of prosecutorial misconduct). A defendant's continued use of such methods would not lead to such a result.
Because we are satisfied that a new trial is warranted, we do not address defendant's excessive sentencing claim.
We reverse defendant's convictions and remand for a new trial.
NOTES
[1] Such other sanctions might include, among other things, contempt proceedings, Rule 1:10, or subsequent disciplinary proceedings.