SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

**State v. Amir A. Andrews (A-105-11) (069594)**

**Argued April 30, 2013 -- Decided October 28, 2013**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court revisits the bright-line rule established in State v. Gilmore, 103 N.J. 508 (1986) for remedying the use of constitutionally impermissible peremptory challenges and considers whether trial judges should be given more flexibility in fashioning a remedy.

During jury selection in the criminal prosecution of defendant Amir A. Andrews, the prosecutor complained that defendant was impermissibly striking jurors based on their race. The prosecutor stated that he did not want to lose the whole panel and that he was satisfied with the panel, but felt compelled to object. The trial court found that the State established a prima facie case of exclusion based on race and informed defense counsel that he must articulate some rational, articulable reason for excluding jurors. When defense counsel could not provide a sufficient reason for his subsequent use of a peremptory challenge, the judge seated the challenged juror. The court completed jury selection, the trial proceeded, and the jury found defendant guilty. Defendant appealed, arguing, among other things, that that the trial court resorted to an improper remedy for the unconstitutional exclusion of a potential juror. The Appellate Division agreed, reversed the jury's verdict and remanded for a new trial. The panel determined that reseating the impermissibly struck juror was in direct contravention of Gilmore, in which the Court determined that once a judge finds an impermissible basis for a peremptory challenge, the judge is obligated to discharge the entire jury panel and begin the jury selection process anew. The Court granted the State's petition for certification. 210 N.J. 109 (2012).

**HELD**: Gilmore's single, bright-line remedy has proven ineffective to fully and fairly respond to the use of constitutionally impermissible peremptory challenges. The Court modifies Gilmore and hereby permits trial judges to choose from a broader set of remedies to address the impermissible use of peremptory challenges.

1. In Batson v. Kentucky, 476 U.S. 79 (1986), the United States Supreme Court held that it is unconstitutional for a prosecutor to peremptorily challenge potential jurors on account of their race. The Supreme Court gave state and federal courts the discretion to fashion their own remedies for the use of constitutionally impermissible peremptory challenges. In State v. Gilmore, 103 N.J. 508 (1986), the Court held that the New Jersey Constitution prohibits peremptory challenges based on religious principles, race, color, ancestry, national origin, or sex. The Court recognized that preventing discrimination during jury selection protects the impartiality of the jury's deliberation and the right of each citizen to serve on a jury. Informed by the remedy established in People v. Wheeler, 583 P.2d 748, 761 (Cal. 1978), the Gilmore Court elected to establish a single, bright-line remedy to redress the unconstitutional exclusion of a potential juror. That remedy is to dismiss the already selected jurors, quash any remaining venire, and start the jury selection process anew. (pp. 11-14)

2. Other jurisdictions and some commentators have observed that the Gilmore remedy tends to reward the offending party's bad conduct and wastes judicial resources. Two appellate decisions suggest that New Jersey's adherence to a single remedy has made it difficult for trial courts to fairly and effectively respond to Batson/Gilmore challenges. In State v. Scott, 309 N.J. Super. 140 (App. Div. 1998), although defense counsel believed that the State was using peremptory challenges to strike jurors based on race, because defense counsel did want to lose the already seated jurors or have the remaining venire quashed, and the trial and appellate courts found that no other remedy was available pursuant to Gilmore, the Gilmore rule ultimately permitted the taint of discrimination to permeate the jury. In State v. Chevalier, 340 N.J. Super. 339 (App. Div. 2001), the trial court reseated three jurors that were improperly excluded based on gender and the Appellate Division reversed, finding that the trial court's remedy was improper because it failed to follow the Gilmore rule. These cases demonstrate that dismissing the venire and restarting jury selection may, in some instances, neither vindicate the rights of the wrongfully excluded jurors nor achieve a fair result. (pp. 14-18)

3.  Virtually all other jurisdictions allow trial judges broader discretion in fashioning remedies for Batson violations than permitted in New Jersey.  For example, the New York Court of Appeals has held that trial judges can seat improperly stricken jurors and force offending parties to forfeit their improperly executed peremptory challenges. People v. Luciano, 890 N.E.2d 214 (N.Y. 2008).  Moreover, Wheeler, the opinion that informed Gilmore's single remedy, has been modified by People v. Willis, 43 P.3d 130 (Cal. 2002).  Willis discussed several permissibly remedies to Batson violations, including assessment of sanctions against counsel, reseating improperly discharged jurors if they are available to serve, and allowing the innocent party additional peremptory challenges if the improperly struck jurors have left.  Willis also emphasized that an alternate remedy must be preceded by the complaining party's waiver of the traditional remedy and identified entertaining challenges at sidebar as a means of minimizing the possibility of juror bias.  Furthermore, Gilmore's single, bright-line remedy does not necessarily deter unconstitutional behavior. Impermissible challenges may persist with a new jury panel.  In addition, by starting the jury selection process anew, the offending party will be placed in the same or better situation than before the improper conduct. (pp. 18-27)

4.  A confluence of factors counsels departure from Gilmore's single, bright-line remedy.  Those factors include that the Gilmore rule has impeded New Jersey courts from responding fairly and effectively to Batson/Gilmore challenges, that most jurisdictions have adopted a more flexible approach, that the California decision that informed Gilmore has been modified, and that the Gilmore remedy does not necessarily deter unconstitutional conduct.  Trial courts may now employ other remedies to address the use of constitutionally impermissible peremptory challenges. A trial court may reseat the juror(s) with the consent of the aggrieved party and require the offending party to forfeit his or her improper peremptory challenge(s).  That remedy vindicates the rights of the improperly excluded juror, deters misconduct, and sends a message that discriminatory conduct will not be tolerated.  Before implementing that remedy, however, the trial court should ensure that the juror is available for reseating, should determine whether any inquiry of the juror is needed to ensure that he or she will be able to participate fairly, and should consider whether a cautionary instruction should be given.  The trial court may also require that juror challenges occur outside of the jurors' presence at the first suggestion of improper use of peremptory challenges.  That remedy will avoid prejudicing parties making challenges in open court without imposing the undue burden of requiring that all challenges occur at sidebar.  The trial court may also award additional peremptory challenges to the aggrieved party, particularly when wrongfully dismissed jurors are no longer available.  Although awarding more peremptory challenges will not vindicate the rights of the wrongfully excluded jurors, it will disincentivize counsel's improper use of peremptory challenges.  Finally, the Gilmore remedy remains available. (pp. 28-31)

5. The Court modifies Gilmore and hereby permit trial judges to choose from the following remedies to address Batson/Gilmore violations on a case-by-case basis:  dismissing the empaneled jury member(s) and the venire and beginning jury selection anew; reseating the wrongfully excused juror(s); reseating the wrongfully excused juror(s) and ordering forfeiture by the offending party of his or her improperly exercised peremptory challenge(s); permitting trial courts to require challenges to prospective jurors outside the presence of the jury; granting additional peremptory challenges to the aggrieved party; or a combination of these remedies as the individual case requires. Every decision to invoke a remedy must assure a fair trial to all and elimination of the taint of discrimination. Because the remedy chosen by the trial judge in this case was contrary to the governing law at the time, and the trial judge failed to explain why the remedy would redress the impermissible challenge, defendant is entitled to a new trial. (pp. 31-33)

The judgment of the Appellate Division is **AFFIRMED AS MODIFIED**, and the matter is **REMANDED** for a new trial.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

        v.

AMIR A. ANDREWS,

    Defendant-Respondent.


        Argued April 30, 2013 – Decided October 28, 2013

        On certification to the Superior Court, Appellate Division.

        Stephen A. Pogany, Special Deputy Attorney General Acting Assistant Prosecutor, argued the cause for appellant (Carolyn A. Murray, Acting Essex County Prosecutor, attorney).

        Lon Taylor, Assistant Deputy Public Defender, argued the cause for respondent (Joseph E. Krakora, Public Defender, attorney).

        Frank J. Ducoat, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Jeffrey S. Chiesa, Attorney General, attorney).

    JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

    In 1986, the United States Supreme Court held that a prosecutor could not peremptorily challenge potential jurors solely on account of their race. Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Subsequently, the

1

Court held that it is also unconstitutional for the defendant in a criminal case to utilize peremptory challenges to remove jurors on the basis of race, Georgia v. McCollum, 505 U.S. 42, 112 S. Ct. 2348, 120 L. Ed. 2d 33 (1992), or on the basis of gender, J.E.B. v. Ala. ex rel. T.B., 511 U.S. 127, 114 S. Ct. 1419, 128 L. Ed. 2d 89 (1994). The same prohibition applies to all parties in civil cases. Edmonson v. Leesville Concrete Co., 500 U.S. 614, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991).

In 1986, this Court determined that a prosecutor may not exercise a peremptory challenge to remove members of a cognizable group based on a presumed group bias. State v. Gilmore, 103 N.J. 508 (1986). The prohibition also applies to peremptory challenges by defendants, State v. Johnson, 325 N.J. Super. 78 (App. Div. 1999), certif. denied, 163 N.J. 12 (2000), and extends to all parties in civil cases, Russell v. Rutgers Cmty. Health Plan, Inc., 280 N.J. Super. 445 (App. Div.), certif. denied, 142 N.J. 452 (1995). The remedy for such conduct is to dismiss the already selected jurors, quash any remaining venire, and start the jury selection process anew.

Here, we revisit that single, bright-line remedy established by Gilmore and determine that trial judges should be given more flexibility in fashioning a remedy to address the constitutionally impermissible use of peremptory challenges condemned by the United States Supreme Court in Batson and by

2

this Court in Gilmore.  In addressing a Batson/Gilmore violation, trial judges may choose from a broader set of remedies fashioned to respond to the circumstances of the individual case.  The choice of remedy must be guided by the twin goals of assuring a fair trial and redressing the constitutionally impermissible behavior.

I.

On October 3, 2006, two women were shot at a local market in Newark.  An Essex County grand jury returned an indictment charging defendant Amir A. Andrews with nine offenses, including conspiracy to commit attempted murder[1] and aggravated assault, two counts of attempted murder, two counts of second degree aggravated assault, various weapons offenses, and witness tampering.  Following trial, a jury found defendant guilty of witness tampering but failed to reach a verdict on the remaining counts.

A second trial commenced several months later.  During jury selection, defendant exercised a peremptory challenge to exclude a white juror.  The prosecutor approached the bench and in a sidebar conference with the trial judge and defense counsel complained that defendant was impermissibly striking jurors based on their race.  The prosecutor also stated that "the last

_____

[1] The State later amended the indictment to conspiracy to commit murder.

3

time we picked a jury we had this issue." Noting that defendant had struck seven white jurors and two African-American jurors, the trial judge found that the State had established a prima facie case of using peremptory challenges to excuse jurors based on their race. The prosecutor stated that he did not want to "lose the whole panel," that he was satisfied with the panel, but felt compelled to object.

Defendant's attorney stated that there was a valid reason for excusing the seven white jurors and started to explain why he had excused a particular juror when the trial judge interrupted. The judge stated that he was satisfied that "there is a pattern" and that the State established "a prima facie case of exclusion based on race." He informed defense counsel that he must articulate "some rational, articulable reason for excluding those jurors that does not relate to their race." When defense counsel did not provide a reason other than "my ambivalence" towards the last excused juror, the trial judge asked the juror to remain.

Defense counsel promptly objected. He argued that the reseated juror might be biased against defendant on account of the failed attempt to exercise a peremptory challenge. The prosecutor proposed that the juror be excused, but defendant must explain the reason for using any other peremptory challenge. The trial judge accepted that proposal.

4

Moments later, defendant exercised a peremptory challenge to excuse a Hispanic juror. At a sidebar conference, defense counsel stated that defendant wanted to excuse the juror because defendant did not believe the prospective juror would be fair because of "what [the prospective juror] does in his spare time." When defendant could not identify those spare time activities, the trial judge stated that defendant could not excuse the juror. The judge seated the juror over the objection of defense counsel and completed jury selection.

Out of the presence of the jury, defendant explained his reason for seeking to excuse the Hispanic juror. He explained a person who lived in the juror's town "do[es]n't know what goes on." Defendant eventually accepted the decision to seat the last juror he had sought to excuse but asked the trial judge to question the juror whether the failed attempt to excuse him would influence his evaluation of the evidence. Explaining that such an inquiry would draw attention to the issue, the trial judge denied the request.

The trial proceeded and on October 23, 2008, the jury found defendant guilty of all charges: second degree conspiracy to commit murder and aggravated assault, two counts of first degree attempted murder, two counts of second degree aggravated assault, third degree unlawful possession of a weapon (a handgun), and two counts of second degree possession of a weapon

5

for an unlawful purpose.  Defendant is serving an extended term of life in prison subject to a No Early Release Act[2] period of parole ineligibility.

## II.

Defendant appealed to the Appellate Division.  He argued that the trial court improperly found that defendant had exercised race-based peremptory challenges and erred by requiring defendant to provide a race neutral reason for excluding subsequent white jurors.  Further, defendant maintained that the trial court resorted to a remedy that was contrary to law.  Defendant also asserted that other trial errors required a new trial and argued that the sentence was excessive.

In an unpublished opinion, the Appellate Division reversed the jury's verdict and remanded for a new trial.  The Appellate Division determined that the trial court "neglected to make adequate findings with respect to the defense attorney's alleged discriminatory use of peremptory challenges" and "failed to conform to the then-extant Osorio[3] paradigm."  The appellate panel reasoned the trial court's determination that the State presented a prima facie case of exclusion based on race was premature because the court did not allow defendant to present

---

[2] N.J.S.A. 2C:43-7.2.
[3] State v. Osorio, 199 N.J. 486 (2009).

6

individual-by-individual, race-neutral justifications for all of his peremptory challenges. Addressing the remedy selected by the trial court, the panel determined that reseating the Hispanic juror was in direct contravention of this Court's holding in Gilmore, supra, 103 N.J. at 539, in which this Court determined that once a judge finds an impermissible basis for a peremptory challenge, the judge is obligated to discharge the entire jury panel and begin the jury selection process anew. The panel also commented that any alteration of the remedy for the constitutionally impermissible use of peremptory challenges was "best left" to the Supreme Court. The Appellate Division reversed defendant's conviction and remanded for a new trial. This Court granted the State's petition for certification. 210 N.J. 109 (2012).

## III.

### A.

The State contends that this Court should re-evaluate the remedy set forth in Gilmore. The State argues that the bright-line rule set forth in Gilmore is too inflexible, improperly rewards unconstitutional behavior, and wastes judicial resources. The State emphasizes that most jurisdictions have adopted more flexible remedies for Batson violations and argues that this Court should follow suit. The State concedes that the trial judge's actions in this case contravene Gilmore's bright-

7

line rule, but contends that the judge's response to the discriminatory challenges –- acquiescing to the prosecutor's request to preserve the then-seated jurors but requiring defendant to provide race-neutral reasons for excusing future jurors –- was "far more reasonable under the circumstances and best exemplified the reasoning behind the United States Supreme Court's decision in Batson."

The State also argues that the Gilmore remedy improperly rewards unconstitutional behavior, as it allows offending parties to manipulate proceedings to their advantage, while wasting judicial resources and eroding public confidence in the justice system.  The State also asserts that consent or waiver from the aggrieved party should be a necessary prerequisite to dismissing the entire venire.

B.

The Attorney General, appearing as amicus curiae, similarly argues that this Court should overrule Gilmore's single remedy and provide more flexibility to trial judges.  The Attorney General notes that nearly all other jurisdictions have granted trial judges discretion to remedy unconstitutional use of peremptory challenges.  Furthermore, the Attorney General contends that New Jersey courts have repeatedly recognized the inherent difficulties of enforcing a single, bright-line remedy. Accordingly, the Attorney General recommends alternative

8

remedies that should be made available to trial courts in the future, such as allowing improperly removed jurors to be reseated and requiring offending parties to forfeit their improperly used peremptory challenges; granting trial judges discretion to require challenges to be made at sidebar to avoid prejudicing parties making unsuccessful challenges in court; and permitting courts to grant additional peremptory challenges to aggrieved parties.

C.

Defendant argues that neither the State nor the Attorney General provided sufficient "special justification" to allow this Court to depart from its binding precedent. Defendant argues that trial judges risk tainting the jury with bias toward violating parties by reseating improperly excused jurors.

Defendant acknowledges that safeguards discussed by the Attorney General, such as instructing the jury after reseating an improperly excused juror, could prevent bias, but he notes that no such instruction was given in this case. Defendant asserts the possibility that the reseated juror exhibited animus toward him is particularly likely in this case since the court interjected after defendant excluded eight white jurors. Accordingly, defendant contends, even if this Court adopted the State's and the Attorney General's recommendations to expand trial judges' discretion in fashioning remedies to Batson

9

violations, the improperly excused juror should not have been reseated in this particular case due to the likely bias.

Assuming an alternative remedy is appropriate, defendant asserts that two minimum requirements should be met: 1) notice to the offending party of precisely what sanctions will be imposed should the violative behavior continue; and 2) the unequivocal waiver or consent to the use of an alternative remedy by the aggrieved party. Additionally, defendant urges that even if the Gilmore remedy is expanded, courts should be required to start anew, at least once, prior to employment of alternative remedies.

Defendant notes that the trial judge here gave no forewarning of the "bizarre remedy" that defendant provide race-neutral justification for subsequently excluding white jurors or risk reseating improperly excluded jurors, and he argues that such remedy was unduly punitive. Defendant also notes that the prosecutor did not unequivocally consent to the alternative remedy in this case.

Defendant next argues that even if this Court finds it necessary to expand the remedies, it should affirm the Appellate Division's decision to grant a new trial based on the panel's determination that there was an insufficient basis to find a prima facie case of discrimination. Defendant argues that the trial judge found a "pattern" of discrimination based solely on

the number of white jurors that were excluded and that the judge erred by not permitting defense counsel to provide race-neutral reasons for any of the seven uncontested peremptory challenges previously used to exclude white jurors.  As such, according to defendant, this Court should at least affirm the portion of the Appellate Division's decision holding that the trial court erred by failing to adhere to the Gilmore/Osorio three-step analysis to identify Batson violations.[4]

IV.

In Batson, supra, the United States Supreme Court determined that it is unconstitutional for a prosecutor to exercise peremptory challenges in a manner that discriminates on the basis of race "or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant."  476 U.S. at 88, 106 S. Ct. at 1719, 90 L. Ed. 2d. at 83.

In Gilmore, supra, this Court held that Article I, paragraphs 5, 9, and 10[5] of the New Jersey Constitution prohibit

---

[4] The issue before this Court concerns the remedy for Batson/Gilmore violations, not the three-step analysis to identify whether a violation occurred.  Osorio, supra, 199 N.J. at 492-93.

[5] Article I, paragraph 5 provides that "[n]o person shall be denied the enjoyment of any civil . . . right, nor be discriminated against in the exercise of any civil . . . right, . . . because of religious principles, race, color, ancestry or national origin."  N.J. Const. art. I, ¶ 5.  Paragraph 9 asserts that "[t]he right to trial by jury shall remain inviolate . . ."

11

prosecutors from exercising peremptory challenges to discriminate against potential jurors on the basis of religious principles, race, color, ancestry, national origin, or sex. 103 N.J. at 524. We reasoned that "[the] right to a trial by an impartial jury, in our heterogeneous society where a defendant's 'peers' include members of many diverse groups, entails the right to trial by a jury drawn from a representative cross-section of the community." Ibid. Adopting the California Supreme Court's justification for the representative cross-section rule, as set forth in People v. Wheeler, we held that the jury system seeks "'to achieve an overall impartiality by allowing the interaction of diverse beliefs and values the jurors bring from their group experiences.'" Gilmore, supra, 103 N.J. at 525 (quoting People v. Wheeler, 583 P.2d 748, 761 (Cal. 1978), overruled in part by People v. Willis, 43 P.3d 130 (Cal. 2002)). Furthermore, we recognized that preventing race-based discrimination during the jury selection process protects not only the integrity and impartiality of the jury's deliberation but also the right of each citizen to serve on a jury. Ibid. Justice Garibaldi stated, "Article I, paragraph 5 implicates not only the defendant's civil rights but also those

---

N.J. Const. art. I, ¶ 9. Finally, paragraph 10 provides that "[i]n all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury." N.J. Const. art. I, ¶ 10.

of citizens generally -- and, historically, one of the rights and obligations of citizenship has been to participate in the administration of justice by serving on grand and petit juries." Ibid.

In Batson, supra, the Supreme Court did not prescribe a remedy. In fact, it gave state and federal courts the discretion to fashion their own remedies:

> In light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today. For the same reason, we express no view on whether it is more appropriate in a particular case . . . for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire.
>
> [476 U.S. at 99 n.24, 106 S. Ct. at 1725 n.24, 90 L. Ed. 2d. at 90 n.24. (internal citations omitted).]

State courts have interpreted this in different ways.[6]

---

[6] Some state courts have read this language to permit only the two identified remedies and permit the trial judge to choose between the two remedies. See, e.g., Coleman v. Hogan, 486 S.E.2d 548, 549-50 (Va. 1997) (holding either remedy is appropriate depending on circumstances of each case); Ezell v. State, 909 P.2d 68, 72 (Okla. Crim. App. 1995) (same). Some state courts permit only one of the remedies identified in Batson. See, e.g., State v. McCollum, 433 S.E.2d 144, 159 (N.C. 1993) (holding venire is discharged and jury selection resumes with new panel when there is Batson violation), cert. denied, 512 U.S. 1254, 114 S. Ct. 2784, 129 L. Ed. 2d 895 (1994); State v. Grim, 854 S.W.2d 403, 416 (Mo.) (directing improperly

13

In Gilmore, this Court elected to establish a single, bright-line remedy to redress improper exclusion of potential jurors following a Batson challenge. 103 N.J. at 539. Where an aggrieved party demonstrates that opposing counsel improperly exercised peremptory challenges on constitutionally impermissible grounds of presumed group bias,

> the court must then conclude that the jury as constituted fails to comply with the representative cross-section requirement and it must dismiss the jurors thus far selected. So too it must quash any remaining venire . . . . Upon such dismissal a different venire shall be drawn and the jury selection process may begin anew.
>
> [Ibid. (quoting Wheeler, supra, 588 P.2d at 765).]

Based on our research, it appears that New Jersey is the only jurisdiction that adheres to the single remedy of striking the venire and starting anew.

---

stricken juror should be reseated), cert. denied, 510 U.S. 997, 114 S. Ct. 562, 126 L. Ed. 2d 462 (1993).

The remedy has been addressed by statute in Texas and court rule in Minnesota. In Texas, the entire venire must be discharged whenever the trial court finds that the prosecutor improperly challenged jurors on the basis of race. Tex. Code Crim. Proc. art. 35.261(b) (2013). The Minnesota Supreme Court adopted a rule that permits the trial judge to reseat the impermissibly challenged juror or to dismiss the venire and resume with a new venire "based upon its determination of what the interests of justice and a fair trial to all parties in the case require." Minn. R. Crim. P. 26.02, subd. (7)(4) (2013).

This remedy is not free from criticism.  Other jurisdictions and some commentators have observed that the Gilmore remedy tends to reward bad conduct by the offending party and contributes to a waste of judicial resources.  See, e.g., Jason Mazzone, Batson at Twenty-Five: Perspectives on the Landmark, Reflections on its Legacy, 97 Iowa L. Rev. 1613, 1619-20 (2012); Emily C. Jeffcott and Mikal C. Watts, What's Required to Remedy Juror Discrimination?  A Brief Discussion on Batson and its Available Remedies, 13 Scholar 615, 626 n.56 (2011).  Undoubtedly, excusing an entire jury panel and starting over with a new panel takes additional time, which intrudes on the ability of the trial court and counsel to address other matters.  A party's reluctance to lose a satisfactorily composed panel may inhibit an objection to constitutionally impermissible conduct by another and permit a tainted panel to decide a case.  Two appellate decisions suggest that our adherence to a single remedy has made it difficult for trial courts in this state to fairly and effectively respond to Batson/Gilmore challenges.

In State v. Scott, 309 N.J. Super. 140, 148-49 (App. Div.) certif. denied, 154 N.J. 610 (1998), defense counsel asked the trial judge to compel the State to provide non-race-based rationales for the State's use of peremptory challenges striking four African-American jurors from the venire.  Defense counsel explained that he did not wish to make a formal Gilmore

15

challenge because he did not want to risk losing the already seated jurors, nor did he want the remaining venire quashed. Id. at 149.  The trial court, however, denied the defendant's request, holding that the court could only compel the State to disclose its reasoning for the contended exclusions after a formal Gilmore challenge had been lodged, in which case the defendant would be required to suffer the consequence of starting jury selection anew if the State's reasons were found unsatisfactory.  Ibid.  On appeal, the Appellate Division recognized that other jurisdictions endow judges with more flexibility; however, the panel explained that it was limited by this Court's decision in Gilmore.  Id. at 151-52.

In Scott, the inflexibility of the Gilmore rule ultimately permitted the taint of discrimination to permeate the jury. Because the complaining party, the defendant, did not want to lose the jurors he had already chosen to try the case, he could do nothing despite disputing the state's discriminatory use of peremptory challenges.  As discussed by the Attorney General in this case, another remedy, such as reseating those found to have been improperly struck, would have both vindicated the rights of the potential juror and would have furthered defendant's right to be tried by a fair and impartial jury free of discriminatory taint.

16

In State v. Chevalier, 340 N.J. Super. 339, 345 (App. Div.), certif. denied, 170 N.J. 386 (2001), the trial court found that defense counsel had improperly excluded jurors on the basis of their gender. At the defendant's second trial, following a mistrial in which the defendant had improperly used peremptory challenges, the judge found that once again defense counsel impermissibly excluded three jurors on the basis of gender. Ibid. Although the trial court acknowledged the single remedy available as set forth in Gilmore -- starting the jury selection anew with a different venire -- the judge declined to take that course. Ibid. Instead, he reseated the three impermissibly excluded jurors. Ibid. The judge explained that he imposed that remedy due to various time constraints and provided an instruction to the jurors to disregard the fact that he had reseated the three jurors when deciding the outcome of the case. Ibid. Subsequently, the empanelled jury convicted the defendant. Id. at 346. The Appellate Division reversed, finding that, as in Scott, despite the fact that the majority of other jurisdictions grant trial courts discretion to impose remedies short of starting jury selection anew, the court was bound by this Court's holding in Gilmore. Id. at 353.

Chevalier, like Scott and this case, demonstrates that reseating improperly stricken jurors may, in certain circumstances, better address concerns of fairness and judicial

17

economy.  Dismissing the entire venire and resuming jury selection with an entirely new venire may, in some instances, neither vindicate the rights of the wrongfully excluded jurors nor achieve a fair result.  Instead, this may actually encourage discriminatory behavior and do nothing to deter future abuses.

Over time, various remedies have been identified and utilized by courts in other jurisdictions.  In South Carolina, a trial judge must first strike the venire and commence jury selection with a new panel.  State v. Jones, 358 S.E.2d 701, 704 n.3 (S.C. 1987), overruled in part by State v. Adams, 470 S.E.2d 366 (S.C. 1996) (modifying third step of Batson methodology to determine whether party has exercised peremptory challenges in constitutionally impermissible manner in accordance with Purkett v. Elem, 514 U.S. 765, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995)).  If a party continues to improperly exercise peremptory challenges, the trial court may reseat the improperly excluded jurors if the circumstances of the case warrant this remedy. State v. Franklin, 456 S.E.2d 357, 360 (S.C.), cert. denied, 516 U.S. 856, 116 S. Ct. 160, 133 L. Ed. 2d 103 (1995).

Trial judges in New York and Pennsylvania may give additional peremptory challenges to the party against whom the peremptory challenges have been misused.  People v. Perez, 829 N.Y.S.2d 61, 64 (App. Div. 2007); People v. Chin, 771 N.Y.S.2d 158, 159 (App. Div.), appeal denied, 778 N.Y.S.2d 780 (2004);

18

Commonwealth v. Hill, 727 A.2d 578 (Pa. Super. Ct.), appeal denied, 747 A.2d 898 (1999). This remedy is appropriate if the wrongly removed juror has been excused and cannot be reseated. A trial court may also order forfeiture of peremptory challenges in addition to reseating the wrongfully excused juror. People v. Luciano, 890 N.E.2d 214, 216-19 (N.Y. 2008). In Massachusetts, a trial judge may simply overrule the constitutionally impermissible challenge. Commonwealth v. Fruchtman, 633 N.E.2d 369, 371 (Mass.), cert. denied, 513 U.S. 951, 115 S. Ct. 366, 130 L. Ed. 2d 319 (1994). Sanctions, such as a monetary fine, have been imposed for repeated violations. Willis, supra, 43 P.3d at 137. Declaration of a mistrial may be an appropriate remedy when the Batson violation is established on a post-trial motion. Minniefield v. State, 539 N.E.2d 464, 466 (Ind. 1989). On the other hand, neither dismissing the criminal charges, cf. Commonwealth v. Burke, 781 A.2d 1136, 1144 (Pa. 2001) ("dismissal of charges is an extreme sanction that should be imposed sparingly or only in cases of blatant prosecutorial misconduct"), nor permitting a white juror to be struck as a remedy to the improper discharge of five black jurors, State v. Hampton, 163 S.W.3d 903, 904 (Mo. 2005), were permitted as appropriate remedies. In addition, giving the improperly excluded juror the choice of serving on the jury or

being excused is not an acceptable remedy.  Woodson v. Porter Brown Limestone Co., 916 S.W.2d 896, 905-06 (Tenn. 1996).

The 2008 New York Court of Appeals decision in People v. Luciano is particularly instructive on the principles that should inform the application of an alternate remedy.  In Luciano, supra, the court held it was appropriate to allow trial judges to seat improperly stricken jurors and force offending parties to forfeit their improperly executed peremptory challenges.  890 N.E.2d at 217.  In doing so, the court considered the harm to the rights of jurors by unconstitutional exclusions and the harm to society "by impairing the integrity of the criminal justice process."  Id. at 218.  The court determined that forfeiture furthers the prevention of such harms through deterrence and reasoned that disallowing forfeiture of challenges puts the offending party in the same position as before the Batson violation.  Ibid.  Furthermore, the court held that "[f]orfeiture promotes the spirit of Batson, signaling to litigants –- and to the jury –- that discrimination will not be tolerated."  Id. at 219.

Several federal appellate courts have similarly granted trial judges more flexibility in fashioning remedies to Batson challenges or recognized the discretion afforded by state courts to trial judges fashioning an appropriate remedy.  See Rice v. White, 660 F.3d 242, 258 (6th Cir. 2011) (recognizing judicial

20

discretion, but disapproving subsequent selection of African-American juror to cure taint caused by prior purposeful discrimination), cert. denied, ___ U.S. ___, 132 S. Ct. 2751, 183 L. Ed. 2d 630 (2012); United States v. Walker, 490 F.3d 1282, 1294-95, 1295 n.14 (11th Cir. 2007) (approving reinstatement of four improperly struck jurors and declining to award additional peremptory challenges to replace "lost" challenges), cert. denied, 552 U.S. 1257, 128 S. Ct. 1649, 170 L. Ed. 2d 354 (2008); United States v. Ramirez-Martinez, 273 F.3d 903, 910 (9th Cir. 2001) (approving reseating improperly excused jurors and returning peremptory strikes to offending party, finding remedy appropriate to redress nature and scope of constitutional violation), cert. denied, 537 U.S. 930, 123 S. Ct. 330, 154 L. Ed. 2d 226 (2002), overruled in part by United States v. Lopez, 484 F.3d 1186 (9th Cir. 2007).

These alternate remedies are not beyond criticism. There is always the possibility that a juror who is reseated after being wrongfully excluded may harbor bias against the offending party. See, e.g., McCollum, supra, 433 S.E.2d at 159 (finding it would be "extremely difficult" to ask improperly excluded jurors to return to jury and render impartial verdict without prejudice). Other selected jurors may be aware of the constitutionally impermissible challenges of one party and develop a bias towards the offending party. A vigilant trial

judge may obviate or minimize any possibility of taint by conducting objections to a peremptory challenge at sidebar.

In each situation in which a trial judge is permitted to choose among several remedies to redress the use of peremptory challenges in a constitutionally impermissible manner, the judge must fashion a remedy that best suits the individual case. In every situation, the selected remedy must assure a jury free from the taint of discrimination and a trial that is fair to all parties.

V.

Both parties and the Attorney General urge the Court to re-examine the use of the single, bright-line remedy announced in Gilmore. Each refers to the passage of time, the decision by the Supreme Court of California to modify People v. Wheeler, and the actions of many other state and federal courts to identify alternate remedies and leave the choice of a remedy to the discretion of the trial judge. The relief requested, however, requires this Court to alter binding precedent.

We must acknowledge that Wheeler, supra, 585 P.2d 748, the opinion that informed Gilmore, has been modified by Willis, supra, 43 P.3d 130. In Willis, the California Supreme Court confronted facts similar to this case. There, a trial judge determined that the defendant had systematically used peremptory challenges to exclude a specific class, namely white males, from

22

the jury. Id. at 133. As in this case, with the State's consent, the judge did not dismiss the entire venire. Id. at 133, 137. Rather, the judge kept the seated jurors and imposed a monetary sanction, which was lifted after trial, on defense counsel. Id. at 133. The California Supreme Court distinguished Wheeler, stating that Wheeler did not involve a situation where the improper group bias was exhibited by the same party seeking dismissal and that it left open the question of possible alternative remedies. Id. at 138. The court overruled Wheeler to the extent it seemingly permitted a single remedy and upheld the remedy fashioned by the trial judge. Id. at 137-39. Justice Chin, writing for a unanimous court, justified granting judges more discretion to remedy Batson violations and noted several permissible remedies:

> As the present case demonstrates, situations can arise in which the remedy of mistrial and dismissal of the venire accomplish nothing more than to reward improper voir dire challenges and postpone trial. Under such circumstances and with the assent of the complaining party, the trial court should have the discretion to issue appropriate orders short of outright dismissal of the remaining jury, including assessment of sanctions against counsel whose challenges exhibit group bias and reseating any improperly discharged jurors if they are available to serve. In the event improperly challenged jurors have been discharged, some cases have suggested that the court might allow the innocent party additional peremptory challenges.

23

[Id. at 137.]

The Willis court emphasized that resort to an alternate remedy must be preceded by a waiver by the complaining party of "the usual remedy of outright dismissal of the remaining venire." Id. at 138. In addition, the Willis court identified entertaining all challenges, for cause or peremptory, at sidebar as a means of preventing or minimizing taint of the venire. Id. at 137-38. Post-Willis, judges in California have been allowed to choose between dismissing the entire venire and reseating the improperly discharged juror in certain situations. See People v. Mata, 302 P.3d 1039, 1040 (Cal. 2013); People v. Overby, 22 Cal. Rptr. 3d 233, 236-37 (Cal. Ct. App. 2004).

We also acknowledge the discretion afforded to trial judges in most jurisdictions to redress exclusion of potential jurors through the constitutionally impermissible use of peremptory challenges. Virtually all states have granted trial judges discretion to design remedies for Batson violations, even if the choice of remedies is limited to striking the venire and resuming jury selection with a new venire or reseating an improperly stricken juror.

Many states have also granted trial courts considerably more leeway than the two remedies identified in Batson to fashion remedies to those challenges. See, e.g., Haschke v. Uniflow Mfg. Co., 645 N.E.2d 392, 396 (Ill. App. Ct. 1994)

24

(vesting trial court with discretion to fashion appropriate remedy, including mistrial); Fruchtman, supra, 633 N.E.2d at 373 (permitting judge to overrule constitutionally impermissible challenge rather than strike venire and recommence jury selection); State v. Holloway, 719 N.E.2d 70, 74 (Ohio Ct. App. 1998) (suggesting allocation of additional peremptory challenge to party is permissible but only if court finds other party used challenges in constitutionally impermissible manner), appeal denied, 704 N.E.2d 579 (Ohio 1999); see also State v. Mooney, 105 P.3d 149, 152-53 (Alaska Ct. App. 2005) (emphasizing need to challenge improper peremptory challenges to preserve ability to fashion an appropriate remedy); State v. Morales, 804 A.2d 902, 920 n.27 (Conn. App. Ct.) (declaring state law does not mandate that court must begin jury selection process anew when Batson challenge is sustained), appeal denied, 810 A.2d 270 (Conn. 2002); Epps v. United States, 683 A.2d 749, 754-55 (D.C. 1996) (observing trial judge in unique position to determine credibility of explanations for challenges and this finding is one that appellate court cannot make); Holmes v. State, 543 S.E.2d 688, 690-91 (Ga. 2001) (recognizing constitutional and statutory authority of trial court to reinstate one juror and remove another); Foster v. State, 111 P.3d 1083, 1088-89 (Nev. 2005) (acknowledging that majority of courts have delegated determination of appropriate remedy for Batson violation to

25

discretion of trial judge); Woodson, supra, 916 S.W.2d at 906-07 (recognizing trial court may decide what remedy to apply depending on circumstances of case); Peetz v. State, 180 S.W.3d 755, 759-61 (Tex. App. 2005) (noting trial court may fashion an appropriate remedy according to its discretion); State v. Velez, 140 P.3d 1219, 1233 (Utah 2006) (noting trial court can fashion remedy if violation did occur); State v. Walker, 453 N.W.2d 127, 134-35 n.12 (Wis.) (declaring trial court should consider factors in selecting whether proper remedy is to either discharge venire and select new jury or reinstate juror), cert. denied, 498 U.S. 962, 111 S. Ct. 397, 112 L. Ed. 2d 406 (1990), abrogated in part by State v. Felix, 811 N.W.2d 775 (Wis. 2012).

As with all discretionary decisions, this authority is not unbounded. In Jones v. State, the Maryland Supreme Court held that judges have discretion to adopt a remedy but in doing so should consider several factors in fashioning an appropriate remedy, reasoning that:

> Among the circumstances relevant to determining what remedy is appropriate is the fact that "a criminal defendant [has] the constitutional right to have a jury whose members are selected pursuant to nondiscriminatory criteria . . . 'and an individual juror has the right not to be excluded from a jury on account of race.'" Ellerbee[ v. State], 450 S.E.2d [443,] at 448 [(Ga. Ct. App. 1994)] (quoting Lewis v. State, [] 424 S.E.2d 626, 628 ([Ga.] 1993)). This need to consider conflicting constitutional rights, as, for example the

26

> equal protection rights of the defendant and the excluded juror, Batson, [supra,] 476 U.S. at 86-87, 106 S. Ct. at 1718, 90 L. Ed. 2d at 81, militates in favor of permitting the trial court to tailor the remedy so as to protect the rights of all the parties concerned.
>
> [683 A.2d 520, 529 (Md. 1996).]

Among the remedies identified in Jones to address constitutionally impermissible use of peremptory challenges are reseating an improperly stricken juror and/or disallowing an unconstitutional challenge, or striking the entire venire and resuming jury selection with a new panel. Id. at 528.

We must also recognize that the single, bright-line remedy set forth in Gilmore does not necessarily deter unconstitutional behavior. Batson's purpose was to eliminate discrimination from the jury selection process. See Luciano, supra, 890 N.E.2d at 218. As illustrated in Chevalier, supra, constitutionally impermissible challenges may persist with a new panel or in successive trials. 340 N.J. Super. at 345. Further, by starting the jury selection process anew, the offending party is generally placed in the same position as if there had been no Batson/Gilmore violation. Ibid. In fact, Gilmore's remedy may place an offending party in a better situation than before he improperly exercised his peremptory challenges, effectively rewarding unconstitutional behavior. Moreover, mandating that trial judges quash the entire venire and start jury selection

27

anew every time a party violates Batson/Gilmore places an unreasonable burden upon the judicial system and can easily waste judicial resources.

A confluence of factors counsels departure at this time from the single, bright-line remedy imposed by Gilmore. Those factors include modification of the California decision that informed our holding in Gilmore, and the approach adopted by most jurisdictions. Virtually all other jurisdictions allow trial judges broader discretion in fashioning remedies for Batson violations than permitted in New Jersey. In addition, the Gilmore single remedy has impeded New Jersey's courts from responding fairly and effectively to Batson challenges.

Permitting additional remedies to address Batson/Gilmore violations will permit the judicial system to respond more effectively to the concerns implicated by discriminatory use of peremptory challenges -- including making the prejudiced juror whole, removing the taint of bias from the jury pool, avoiding animus against the offending party, maintaining public confidence in the justice system, deterring future impermissible conduct, and preserving judicial resources.

Among the remedies that a trial court may employ is reseating the juror(s) with the consent of the aggrieved party and forfeiture by the offending party of their improper peremptory challenge(s). Luciano, supra, 890 N.E.2d at 215; see

28

also Willis, supra, 43 P.3d at 137; State v. Nelson, 85 So. 3d 21, 36 (La. 2012).  That remedy addresses the damage caused by Batson/Gilmore violations in ways that the single, bright-line Gilmore remedy often does not.  It vindicates the rights of the juror as a victim of the unconstitutional conduct.  Also, reseating jurors and forcing offending parties to forfeit their peremptory challenge(s) sends an important message to the public that our judicial system will not allow discriminatory conduct in the courtroom.  Forfeiture should deter the unconstitutional behavior condemned in Batson and Gilmore.

Several factors, however, should be considered before implementing the remedy of reseating wrongfully challenged jurors because reseating a juror presents a unique set of challenges.  First, before reseating an improperly excused juror, the trial court should ensure that the juror is available for reseating.  For example, in most instances, neither the court nor the aggrieved party nor the excluded juror will recognize discrimination against the first aggrieved juror because it is almost impossible to make a prima facie case of discrimination after just one use of a peremptory challenge to strike a prospective juror.  In that case, the juror may be sent home or exposed to media influences, making it impracticable to reseat him or her.  Second, if the juror is available to be reseated, the court should consult with counsel to determine

29

whether any inquiry of the juror is appropriate and, if so, the nature of the inquiry. The judge must ensure that the reseated juror will be able to participate fairly and impartially in the trial. The judge must also consider whether a cautionary instruction should be given to the reseated juror and the panel as a whole concerning the need not to hold any animus against the party that unsuccessfully attempted to excuse that juror or the party that resisted that effort. Once again, any instruction must be preceded by consultation with counsel.

Another remedy within the discretion of the trial court is to alter the procedure for exercising challenges so that the challenges occur outside of the jurors' presence at the first suggestion of improper use of peremptory challenges. Such a modification to the jury selection process would avoid prejudicing parties making unsuccessful challenges in open court without imposing an undue burden by requiring that all challenges occur at sidebar. Furthermore, that alteration would limit the extent to which the public confidence in the justice system is undermined by Batson/Gilmore violations because wrongfully excused jurors would not be aware of the grounds upon which they were removed.

Awarding additional peremptory challenges to the aggrieved party upon a finding of improper use of peremptory challenges, particularly when wrongfully dismissed jurors are no longer

30

available, would similarly alleviate the concerns discussed in Batson. Although awarding more peremptory challenges would not vindicate the rights of the wrongfully excluded jurors, the availability of such an option to trial courts would certainly disincentivize counsel's improper use of peremptory challenges.

Finally, the remedy mandated by Gilmore, in which a trial judge may, in his or her discretion, dismiss the empaneled jury and begin the process anew upon a determination that counsel has improperly excluded jurors, remains available.[7]

The remedy or remedies selected to redress a Batson/Gilmore violation must never be informed solely by the desire to expedite a trial. Rather, every decision to invoke a remedy other than the single Gilmore remedy and the remedy actually selected must assure a fair trial to all and elimination of the taint of discrimination.

VI.

The Court concludes that the various circumstances identified and discussed in this opinion warrant modification of the single, bright-line remedy set forth in Gilmore. As evidenced by the Appellate Division panels' respective struggles

---

[7] Imposition of only a monetary sanction against the attorney for the offending party does nothing to address the constitutionally impermissible conduct. In rare circumstances it may be a suitable supplemental remedy to address egregious conduct and serve as a disincentive to future improper behavior. See also R. 1:10-1. The decision to invoke this supplemental remedy rests in the discretion of the trial judge.

in Scott and Chevalier, the bright-line remedy has proven ineffective to fully and fairly respond to the wrong. Additionally, the California Supreme Court's departure from the single remedy announced in Wheeler further supports the proposition that a broader approach is necessary. Most importantly, the bright-line remedy does not necessarily deter the unconstitutional behavior condemned in Batson and Gilmore.

Accordingly, we modify Gilmore to the extent it imposed a single remedy to respond to the constitutionally impermissible uses of peremptory challenges by any party, and hereby permit trial judges to choose from a broader set of remedies to address Batson/Gilmore violations on a case-by-case basis. Those remedies include dismissing the empaneled jury member(s) and the venire and beginning jury selection anew; reseating the wrongfully excused juror(s); reseating the wrongfully excused juror(s) and ordering forfeiture by the offending party of his or her improperly exercised peremptory challenge(s); permitting trial courts to require challenges to prospective jurors outside the presence of the jury; granting additional peremptory challenges to the aggrieved party, particularly when wrongfully dismissed jurors are no longer available; or a combination of these remedies as the individual case requires.

32

## VII.

In this case, the Appellate Division found the trial court erred by finding a prima facie case of discrimination against white jurors. The panel noted that the prosecutor obliquely raised his objection to defendant's conduct and never unequivocally asked the trial judge to invoke the Gilmore remedy. In addition, the Appellate Division correctly held that the trial judge did not follow the three-part Osorio test before finding a prima facie case of discrimination against white jurors by defendant. For those reasons alone, we affirm the Appellate Division judgment reversing the judgment of conviction and remanding the matter for a new trial. We further hold that the remedy chosen by the trial judge, although utilizing one of the permissible remedies identified in this opinion, was contrary to the governing law at the time of trial, and the trial judge failed to explain why the remedy would redress the impermissible challenge. Under these circumstances, defendant is entitled to a new trial.

## VIII.

The judgment of the Appellate Division is affirmed as modified, and the matter is remanded for a new trial.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and PATTERSON; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.

33

SUPREME COURT OF NEW JERSEY

NO. ___A-105___                          SEPTEMBER TERM 2011

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


STATE OF NEW JERSEY,

      Plaintiff-Appellant,

          v.

AMIR A. ANDREWS,

      Defendant-Respondent.


DECIDED      October 28, 2013_____
           Chief Justice Rabner        PRESIDING
OPINION BY     Judge Cuff (temporarily assigned)_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM AS MODIFIED/REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |